OPINION OF THE COURT
Robert D. Lippmann, J.
Petitioner landlord brings this holdover proceeding alleging illegal occupants or roommates in violation of a lease agreement and in violation of Real Property Law § 235-f.
A lease effective October 26, 1978 was offered respondent which she refused to execute because it contained a restrictive clause limiting occupancy of the premises to “the tenant and a male occupant”. One month later another lease agreement, modified to the extent of deleting the restrictive clause, was executed by the parties. At its expiration in January 1981, a renewal lease, which like the original lease was devoid of the restrictive clause, was executed.
It is evident that the 1978 lease came about as the result of discussions between the parties during the course of which tenant insisted on and was granted the right to be free to share the seven-room apartment with more than one roommate. In a letter dated September 28,1978, landlord wrote that apart from the “gentleman” living with tenant, “No other persons are permitted unless only girls in the apt.” In a letter dated October 10, 1979, landlord refers to “Your Sub-Tenants — the couples” with a suggestion by landlord that they “should pay some of the repairs of the windows.” Both letters indicate not merely peti *886 tioner’s awareness of the existence of one or more roommates, but the acceptance, indeed approval, of these occupants.
In light of these facts, it is clear that the deletion of the restrictive clause from the lease was the result of “bickering” and ultimately mutual agreement over that contractual point. Hence, its absence cannot be construed as granting the landlord by reservation a right to limit occupancy as would be the case where rights not specifically granted might be construed to be rights reserved.
The 1981 renewal lease is equally silent with respect to limiting occupancy to tenant only. The terms of the original lease were therefore left unchanged.
It is undisputed that the tenant shares the seven-room apartment with two roommates. Although the renewal lease terminated January 1984, the terms of an expired residential lease continue to govern the landlord/tenant relationship until such time as a renewal lease is offered. Occupancy of the apartment by the tenant plus two additional roommates is not therefore in violation of the lease.
Petitioner next argues that occupancy by more than one occupant other than the tenant is in violation of Real Property Law § 235-f (3), the so-called “roommate statute”. It states: “Any lease or rental agreement for residential premises entered into by one tenant shall be construed to permit occupancy by the tenant, immediate family of the tenant, one additional occupant, and dependent children of occupant.”
Petitioner interprets the provision as incorporating into all residential leases in New York State a clause permitting the tenant to have one additional occupant and no more, thus giving a landlord a right to assert a statutory violation as a cause of action in the event a tenant has more than one additional occupant.
In short the issue presented is whether in the absence of a lease clause restricting occupancy to only one additional occupant, an owner may use section 235-f offensively.
In resolving this issue, the legislative purpose for enacting section 235-f must be examined. The Legislature made the following findings:
“The legislature hereby finds and declares that the serious public emergency which led to the enactment of the existing laws regulating residential rents and evictions continues to exist * * *
*887 “The legislature further finds and declares that recent judicial decisions refusing to extend the protection of the human rights laws to unrelated persons sharing a dwelling will exacerbate this serious problem; that unless corrective action is taken by the legislature, thousands of households throughout this state composed of unrelated persons who live together for reasons of economy, safety and companionship may be placed in jeopardy. The legislature therefore declares that in order to prevent uncertainty, potential hardship and dislocation of tenants living in housing accommodations subject to government regulations as to rentals and continued occupancy as well as those not subject to such regulation, the provisions of this act are necessary to protect the public health, safety and general welfare.” (L 1983, ch 403, § 1.)
The clear purpose of the statute is to enlarge the protection of tenants and roommates who before the enactment of section 235-f were in jeopardy of losing their homes. It was not the Legislature’s intent to narrow or in any way limit rights obtained by tenants through lease agreements. Such a reading works against the shielding effect of section 235-f and threatens the sanctity of valid private contractual law. Thus, where a lease allows more than one additional roommate, the purpose of section 235-f would be undermined, indeed perverted were courts to permit landlords to use the statute as a sword against the very group it was designed to shield.
Any residual doubt is dispelled by subdivision (6) of section 235-f: “nothing in this section shall be construed to reduce or impair any right or remedy otherwise available to any person residing in any housing accommodation on the effective date of this section which accrued prior to such date.”
Consonant with the expressed legislative intent of the statute, the benefits of section 235-f inure to tenants and roommates. Landlords cannot claim its protection; they may not usurp its purpose by asserting section 235-f as a cause of action. If there has been a lease violation with respect to the number of occupants, it is on this ground that an owner may institute a summary proceeding. Respondent tenant may then assert a section 235-f defense if applicable.
Here there has been no lease violation and without such a violation, petitioner cannot bootstrap an eviction proceeding to a statutory provision fashioned to function as tenants’ defensive mechanism.
In accordance with the foregoing, the petition is dismissed.