■ CAPITAL HOLDING COMPANY, Respondent, v RENA STAVRO-LAKES, Appellant, et al., Respondents. [662 NYS2d 14] —Order of the Appellate Term of the Supreme Court, First Department, entered November 8, 1996, reversing an order of the Civil Court, New York County (Shirley Kornreich, J.), entered March 8, 1996, which granted respondent-tenant's motion for summary judgment dismissing the petition in this holdover

proceeding, unanimously reversed, on the law, without costs, and the petition dismissed. The Clerk is directed to enter judgment accordingly.

Petitioner Capital Holding Company ("petitioner") is the owner of a residential apartment building at 220 West 93rd Street, in Manhattan. Respondent Stavrolakes ("Stavrolakes" or "tenant") is the tenant of apartment 15-A, having lived there for 13 years. It is undisputed that the apartment is subject to the rent control laws, that there is no written lease between the parties and that Stavrolakes has two roommates who are not tenants, and are not related to her. On October 26, 1995, petitioner served a 10-day Notice to Cure on Stavrolakes alleging a breach of a substantial obligation of her statutory tenancy, to wit, having more than one occupant of her apartment who is not a family member or co-tenant in violation of Real Property Law § 235-f (3) (also known as the "Roommate Law"). The Notice demanded that the tenant cure the violation by November 11, 1995, or her tenancy would be terminated. The tenant failed to cure and petitioner served a Notice of Termination.

Petitioner commenced a holdover proceeding on January 2, 1996, and the tenant answered. Simultaneously, the tenant moved for summary judgment dismissing the petition on the ground that her two roommates were not subject to rent control under New York City Rent and Eviction Regulations (9 NYCRR) § 2200.2 (f) (5). Petitioner cross-moved for summary judgment on the grounds that the tenant did not dispute that two unrelated persons were living with her in the apartment in violation of Real Property Law § 235-f (3), and that the Rent and Eviction Regulation cited by respondent was inapplicable. The Civil Court, relying on *Schneller v Moed* (128 Misc 2d 885 [Civ Ct, NY County 1985]), held that because "the intent of the statute was to benefit and protect tenants * * * the statute should not be utilized in a summary proceeding as grounds for eviction."

The Appellate Term reversed, by a 2 to 1 vote, and granted petitioner's cross motion for summary judgment. Relying on its previous decision in *425 Realty Co. v Herrera* (146 Misc 2d 790 [App Term, 1st Dept 1990]), the court stated that while Real Property Law § 235-f "prohibits landlords from restricting occupancy solely to family members, it does not afford eviction protection to tenants where the total number of occupants *exceeds* the statutory [limit]." The Appellate Term specifically upheld a landlord's right to bring a summary proceeding where a tenant violates the "enforceable occupancy limitations" in

Real Property Law § 235-f. However, the dissent argued that the remedial purpose of the statute would not be served by permitting a summary proceeding to evict a tenant merely for having more than one unrelated occupant in the apartment.

We reverse. The legislative history of Real Property Law § 235-f reveals that its enactment was a response to "recent judicial decisions refusing to extend the protection of the human rights law to unrelated persons sharing a dwelling" (L 1983, ch 403, § 1; *see, Hudson View Props. v Weiss*, 59 NY2d 733). The Legislature also found that "unless corrective action is taken * * * thousands of households throughout this state composed of unrelated persons who live together for reasons of economy, safety and companionship may be placed in jeopardy" (L 1983, ch 403, § 1). The statute's general prohibition, in subdivision (2), makes it "unlawful for a landlord to restrict occupancy of residential premises, by express lease terms or otherwise, to a tenant or tenants or to such tenants and immediate family." Based on the above-mentioned legislative findings, the thrust of the general prohibition, and the title of the section: "Unlawful restrictions on occupancy," it is undeniable that this section was passed to protect tenants and occupants, not landlords.

Petitioner's holdover proceeding is premised on subdivision (3) of Real Property Law § 235-f: "Any lease or rental agreement for residential premises entered into by one tenant shall be construed to permit occupancy by the tenant, immediate family of the tenant, one additional occupant, and dependent children of the occupant provided that the tenant or the tenant's spouse occupies the premises as his primary residence."

Prior interpretations of the statute have varied. Some courts have held that subdivisions (3) and (4)* set occupancy limitations for residential premises, which, if violated, are enforceable by a landlord in a proceeding brought under this section (*see, 425 Realty Co. v Herrera, supra*). Others, however, have focused on the legislative purpose to protect tenants and unrelated occupants, and concluded that landlords may not affirmatively use the statute's occupancy limits as a basis for summary eviction proceedings (*see, Mitchell Gardens No. 1 Coop. Corp. v Cataldo*, 169 Misc 2d 983 [Civ Ct, Queens County

---

* Subdivision (4) provides that leases entered into by *two or more* tenants shall be construed to permit occupancy by tenants, the immediate family of tenants, occupants and dependent children of occupants, provided that the total number of tenants and occupants, excluding the occupants' dependent children, does not exceed the total number of tenants on the lease.

1996]; *Schneller v Moed, supra*). Neither the Court of Appeals nor any of the Appellate Divisions have directly addressed this issue.

We do not read subdivision (3) as creating an affirmative right of action for landlords to enforce occupancy limitations. In our view, such an interpretation would be totally at odds with the balance of the statute. Indeed, the language of subdivision (3) is itself permissive (the lease "shall be construed to permit occupancy * * * [of] one additional occupant"), rather than restrictive, and there is no express statement that a tenant may have only one unrelated roommate.

Additionally, subdivision (9) of the statute, listing remedies available for violations of the section, shows that no right of action was intended to vest in landlords (*see, Podsiadlo v Pacheco*, NYLJ, Mar. 26, 1997, at 31, col 1 [Civ Ct, Kings County]). Subdivision (9) permits "[a]ny person aggrieved by a violation of this section" to maintain an action for "an injunction to enjoin and restrain such unlawful practice"; for "actual damages sustained as a result of such unlawful practice"; and for court costs. It is undisputed that the only "unlawful practice" referred to in the entire statute is the one prohibiting landlords from restricting occupancy of residential premises to tenants and their immediate families (Real Property Law § 235-f [2]). The remedies provided pertain only to statutory violations by *landlords*. This is persuasive evidence that landlords were not intended to be "aggrieved" persons under section 235-f (9).

Moreover, when subdivision (3) is viewed in the context of the section's other provisions, it is clear that the section was not intended to restrict tenants' rights. The second clause of subdivision (6) states that "nothing in this section shall be construed to reduce or impair any right or remedy otherwise available to any person residing in any housing accommodation on the effective date of this section which accrued prior to such date." This language confirms the absence of any legislative intent to restrict the existing rights of tenants and occupants. Petitioner distorts the legislative purpose of section 235-f, and the judicial decision that precipitated it (*Hudson View Props. v Weiss, supra*), by arguing that the statute expanded occupancy rights that previously did not exist. It incorrectly asserts that prior to the enactment of section 235-f, only family members could be legal occupants of a statutory tenant. This is simply not the case, as in the absence of a contrary lease provision, their was *no statutory limit* on the number of occupants permitted. Section 235-f did not expand

tenants' occupancy rights; it merely limited a landlord's ability to restrict them. Contrary to petitioner's argument, our holding will not restrict landlords from setting reasonable occupancy limitations in leases, or prevent them from enforcing such lease provisions, so long as they do not violate the minimum protections afforded tenants and occupants under section 235-f.

As stated in *Schneller v Moed* (*supra*, at 887), "where a lease allows more than one additional roommate, the purpose of section 235-f would be undermined, indeed perverted were courts to permit landlords to use the statute as a sword against the very group it was designed to shield." Concur—Ellerin, J. P., Wallach, Nardelli, Rubin and Mazzarelli, JJ.