OPINION OF THE COURT
Per Curiam.
Final judgment entered January 24, 1984 modified by striking the provision staying the warrant of eviction and, as modified, affirmed, with $25 costs to the appellant.
Order dated October 17, 1983 affirmed, without costs. Tenant, a rent-stabilized occupant at premises 301 East 79th Street, Manhattan, obtained permission from his landlord to *681 sublease the subject furnished apartment for the period July 1, 1982 through December 31,1982. Landlord was advised that the monthly rental to be paid by the subtenant would be $724.56, or 10% above the rental on the prime lease. Indeed, the sublease agreement executed by tenant and the subtenant provided: “Both the overtenant and undertenant hereby affirm that the rent stipulated in paragraph 4 herein [§ 724.56] represents the only consideration paid by Undertenant to Overtenant for the demised premises and the use and benefit of any appurtenances thereto”. It is not now disputed that contrary to the information given to the landlord and the sublease provision quoted above, tenant actually charged the subtenant $1,500 per month; a broker received a $1,500 commission (i.e., one month’s rent) for its role in the transaction.
Upon learning of this state of facts, landlord commenced holdover summary proceedings. Tenant answered, but did not testify; the subtenant defaulted. Housing Court found that tenant had violated a substantial lease obligation, in that he had procured landlord’s consent to the sublease on the basis of misrepresentation. A final judgment of possession was granted in landlord’s favor, but issuance of the warrant was stayed on the ground that the breach had been “cured” shortly after the commencement of the proceeding, the subtenant having removed from the premises.
We disagree with so much of the decision below as permanently stayed issuance of the warrant. The cure provision contained in RPAPL 753 (4) is not to be rotely applied in all cases (see, e.g., Beekman Estate v Hanson, NYLJ, Dec. 5,1984, p 6, col 2 [App Term, 1st Dept]), and we think a cure in these circumstances would not be in furtherance of the public interest. The Rent Stabilization Law was enacted, in part, “in order to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices” which were then prevailing due to an acute shortage of dwelling space (Administrative Code of City of New York § YY51-1.0). The integrity of the rent stabilization scheme is obviously undermined if tenants, who themselves are the beneficiaries of regulated rentals, are free to sublease their apartments at market levels and thereby collect the profits which are denied the main landlord. The rent payable by a subtenant is to be “consistent with the provisions of the Rent Stabilization Law” (Code of Rent Stabilization Association of New York City, Inc. § 21 [A]); clearly, the rent extracted by this tenant, in excess of 100% of the stabilized rent, was not in any *682 sense “consistent” with the law.[1] The tenant was commercializing with the apartment in a manner which defrauded his landlord as well as his subtenant.[2] This practice, which the Rent Stabilization Law was designed to prevent, is not to be condoned by permitting the tenant to remain after the fraud has been found out.
Dudley, P. J., Riccobono and Sandifer, JJ., concur.

. At the time of the subletting herein, the Conciliation and Appeals Board permitted a tenant who sublet furnished premises to receive an increase in the stabilized rent not exceeding 10%. The Court of Appeals thereafter held that the value of furnishing was to be taken into account when fixing the formula to determine the sublease rent (Matter of Krantz v Conciliation & Appeals Bd., 57 NY2d 915, revg 86 AD2d 801, on dissent of Ross, J.). The record before us is devoid of any evidence with respect to the furnishings in this apartment. It is also noted that the Rent Stabilization Law now expressly provides that the rental charged to a subtenant may not exceed the stabilized rent plus a 10% surcharge if the unit sublet was furnished; and that an owner may terminate the tenancy of a tenant who sublets in violation of this provision (Administrative Code § YY51-6.0 [c] [12] [a], [c]).

. Whether or not the subtenant was a willing participant in the tenant’s scheme is, in our view, irrelevant. The subtenant was necessarily aware that she was paying a prohibited premium for the apartment, but may have yielded to the tenant’s demand because of her own need for the space.