OPINION OF THE COURT
Peter Tom, J.
This is a holdover proceeding brought by a prime tenant against the subtenant alleging that the subtenancy has been terminated.
In May 1980, petitioner, a rent-controlled tenant, placed an ad in a newspaper to sublet her apartment. Respondent responded and, thereafter, subleased petitioner’s apartment for a period of four months commencing on June 1, 1980. The *363 sublease agreement was extended by petitioner, orally, for one year and in the fall of 1981, petitioner again extended the sublease but did not mention the period of the extension.
In or about October 1983 petitioner requested respondent to vacate the premises and when respondent refused, the instant proceeding was commenced in January 1985.
The fact is uncontroverted in this case that petitioner’s monthly rental in 1980 was in the sum of $250 and she charged respondent a monthly rent of $600; in July 1981, her monthly rent was $257.89 and she charged respondent $650; in April 1982, her monthly rent was $307.50 and she charged respondent $750 and in September 1983 her monthly rental was $302.50 and she charged respondent $775. In September 1983, petitioner demanded monthly rent in the sum of $825 but respondent was only willing to pay $775.
For the period from June 1980 through June 1984, petitioner realized a substantial profit subletting her apartment to respondent. The sublet was made without the knowledge or consent of the landlord who is not a party in this proceeding.
Respondent, in his answer, requests the dismissal of the petition and counterclaims for treble damages in the sum of $59,657.79 and attorney’s fees.
This case appears to be a case of first impression as to whether a rent-controlled tenant can forfeit her rights to an apartment by subletting it for a profit.
The court has researched this issue and finds ample authority dealing with rent-stabilized tenants but finds no case on point dealing with a rent-controlled tenant.
The courts have condemned the practice of profiteering, for personal gains, of rent-stabilized apartments, and have forfeited the rights and benefits of the profiteering sublessors to the rental accommodation, and stripped them of the protection of the rent stabilization laws. (Matter of Avon Furniture Leasing v Popolizio, 116 AD2d 280 [1st Dept]; Yellon v ReinerKaiser Assoc., 89 AD2d 561 [2d Dept 1982]; Oxford v Cayton, NYLJ, Nov. 19, 1985, p 7, col 1 [App Term, 1st Dept]; Hutchins v Conciliation & Appeals Bd., 125 Misc 2d 809 [Sup Ct, NY County 1984]; Schuller v D'Angelo, 117 Misc 2d 528 [Sup Ct, NY County 1983]; Matter of Sunderland v Conciliation & Appeals Bd., NYLJ, Nov. 1, 1982, p 13, col 3 [Sup Ct, NY County]; Matter of Walsh [Conciliation & Appeals Bd.], NYLJ, Oct. 14, 1982, p 7, col 4 [Sup Ct, NY County]; Conti v Citrin, 130 Misc 2d 834 [Sup Ct, NY County].)
*364 A new breed of landlords have been created due to the shortage of housing rental units in the City of New York and the potentiality of profit making by owners and prime tenants of rent-regulated apartments. These entrepreneurs are termed illusory tenants. This term has been defined as a prime tenant who rents a rent-stabilized or rent-controlled apartment, or apartments, which he never intends to occupy but rather for the purpose of subleasing it for a profit. (Hutchins v Conciliation & Appeals Bd., supra; Matter of Avon Furniture Leasing v Popolizio, supra.)
In the Hutchins case (supra), the court describes two types of illusory tenants. The first involves a "strawman” which is a tenant acting as the alter ego of the landlord and subleases the apartment to circumvent the rent laws. The second involves a prime tenant who rents a rent-stabilized or rent-controlled apartment and leases it as a business.
In the present case, petitioner does not fall into either category of an illusory tenant. Petitioner is not an illusory tenant for reasons that she lived in this apartment for an extensive period of time since September 1963, and that she did not sublet her apartment as a business. Her reason for the sublet was that she became ill and thought the air in Florida would be good for her health. There is conflicting evidence showing that petitioner initially went to England before going to Florida.
Petitioner is merely a prime tenant who subleased her rent-controlled apartment at the fair market value for an astronomical profit.
It does not matter whether petitioner is termed a prime tenant, a sublessor or an illusory tenant, or whether the premises in issue is a rent-stabilized or rent-controlled apartment, the court would have to reach the same result, based on the facts of this case, as in cases dealing with illusory tenants of rent-stabilized apartments.
It is clear from case precedents that a rent-stabilized tenant who sublets his or her apartment for a profit may forfeit his or her rights to the apartment. The Appellate Term has reasoned that such action by the court to forfeit the rights of a sublessor is mandated by the fact that profiteering and commercializing of rent-regulated apartments subverts the integrity of the rent-stabilized scheme which is to prevent " 'exactions of unjust, unreasonable and oppressive rents’ ” (Continental Towers Ltd. Partnership v Freuman, 128 Misc 2d *365 680, 681 [App Term, 1st Dept]). The court then went on to state that the purpose of the rent stabilization laws would be undermined if the tenants, who are themselves beneficiaries of regulated rentals, are free to sublease their apartments at market levels for a profit. The appellate court then denied the sublessor the opportunity to cure the violation pursuant to RPAPL 753 (4) and ordered his eviction.
This rationale should apply equally if not more to a rent-controlled tenant, who profits from her rental accommodation, since rent-controlled units are more stringently controlled than rent-stabilized units and that the rent-controlled tenant derives a higher benefit in rent regulation than that of a rent-stabilized tenant. (See, Sullivan v Brevard Assoc., 66 NY2d 489, 494-495 [1985].)
In this case, petitioner, in subletting her apartment for a profit, has circumvented and subverted the remedial purpose of the rent control laws which were intended to provide a fair return to landlords on their investment and protect the tenants from unreasonable and unjust rents in a housing market where an affordable rental has become a rare commodity. Petitioner has used the very rent protection scheme of the rent control laws to manipulate a profit at the expense of the landlord at a time when building owners blame much of their woe in their real estate investments and much of the city’s building decay on rent restrictions. Petitioner, who is being subsidized by the landlord, is profiting from her landlord’s investment, in a manner which the owner could not do by law. Petitioner, in this sublet, has deprived respondent of the protection of rent regulation and has removed from an already constrained housing market an available rental accommodation.
Petitioner has exacted a rental from the subtenant at an average of 247% above the regulated rent and has pocketed the sum of $19,976.49 in profit from June 1980 through June 1984. This is an impressive profit margin in any form of investment or business venture.
Petitioner’s argument that she is entitled to a higher rental because of furnishings she subleased with the apartment is without merit. Petitioner cites Matter of Krantz v Conciliation & Appeals Bd. (57 NY2d 915 [1982]). In the Krantz case, the Court of Appeals allowed a prime tenant to charge over a 10% increase in the stabilized rent based on the consideration of the lavish and expensive furnishings in the apartment.
*366 In this case there is no evidence that petitioner’s furnishings can be classified anywhere near lavish or expensive. The evidence shows the furnishings are ordinary, used furnishings. The court cannot conceive the quality or type of furnishings petitioner may have in the apartment to justify a charge of 247% increase of the regulated rent.
Prior to the commencement of this trial, the court informed petitioner’s attorney that if respondent can properly prove his defense and counterclaims, there could be dire consequences against petitioner. The court then asked if petitioner wished to settle this case. Petitioner’s attorney later returned and informed the court that petitioner wished to go to trial.
Petitioner has testified that the reason why she wishes to return to her apartment from Florida is because she has acquired Hodgkin’s disease and is receiving treatment at Memorial Sloan-Kettering Hospital. The evidence also shows that she lives in her own home in Florida, and that she has been filing annual Florida income tax returns and paid Florida taxes from 1981 to present. Petitioner did not file New York State and local tax returns for this period. Her car is also registered in Florida.
The court sympathizes with her condition but her health is not relevant or germane to the issue of whether she is entitled to this apartment. Respondent also claims that he is suffering from an illness similar to petitioner’s.
Petitioner’s testimony has been so contradictory throughout the course of this trial that the court finds her testimony, at times, to be unbelievable.
It is interesting to note, even though it is not relevant to the issue in this proceeding, that there is a red herring plan pending to co-op this building.
The court has forewarned petitioner and her attorney of the consequences of this case.
Based on the foregoing, the court finds that petitioner has forfeited her rights to this apartment and may not commence the instant holdover proceeding. (Continental Towers Ltd. Partnership v Freuman, supra.) However, the court is not making a determination of respondent’s rights as a legal tenant in this apartment with reference to the landlord of the building.
Accordingly, the petition is dismissed.
The court dismisses respondent’s argument that this court lacks subject matter jurisdiction because this is a rent-con *367 trolled unit and a certificate of eviction is required to evict respondent pursuant to Administrative Code of the City of New York § 51-6.0 (a). Respondent argues that the rent control laws define a landlord to include a sublessor and a tenant to include a sublessee and, therefore, a certificate of eviction from the Office of Rent Control is required to evict respondent. Respondent cites Muller v Stein (116 Misc 2d 37, affd 458 NYS2d 902 [App Term, 1st Dept]) in support of his contention.
There appears to be a rational basis in respondent’s contention. However, this issue was raised in Part 18 by motion, and Judge Whitman has decided this issue against respondent in his decision dated May 14, 1985. This court does not sit as an appellate court and has no jurisdiction to reverse the decision of a Civil Court Judge. (See, 520 E. 81st St. Assoc. v Heineman, NYLJ, May 17, 1982, p 15, col 1 [App Term, 1st Dept].)
Further, it appears that respondent has chosen this forum over the long process in the Office of Rent Control of the Division of Housing and Community Renewal. Respondent did not appeal the decision of Judge Whitman nor did he raise this issue, at any time, during this trial.
The court also rejects respondent’s contention that the agreement between the parties constituted an assignment and, therefore, petitioner relinquished all rights to this apartment and cannot bring this proceeding.
An assignment is a transfer of the entire interests of the prime tenant in the real property to the sublessee. If the prime tenant retains a reversionary interest in the real property, the transfer constitutes a sublease. (New Amsterdam Cas. Co. v National Union Fire Ins. Co., 266 NY 254, 259, 260 [1935]; Cooper v 140 E. Assoc., 27 NY2d 115, 118-119 [1970]; Conklin Dev. Corp. v Acme Mkts., 89 AD2d 769 [3d Dept]; 1 Rasch, New York Landlord and Tenant — Summary Proceedings § 178.)
In this case, petitioner retained a reversionary interest in this apartment as evidenced by all her furnishings she left in the apartment together with personal belongings stored in a foyer closet. Petitioner has paid rent to the landlord at all times and continues to pay rent in her own name. Based on the conduct of the parties and the arrangement of respondent’s occupancy of this apartment, the court finds that the understanding between the parties was that either party may terminate the tenancy at will.
The arrangement between petitioner and respondent consti *368 tutes a month-to-month tenancy. (Garner v Gerrish, 99 AD2d 608 [3d Dept].)
Respondent is also entitled to damages of up to three times the overcharge if such violation is found to be willful. (Administrative Code § Y51-11.0 [d] [2].)
This section provides for an action for overcharge by a tenant against the landlord. The rent control laws define a landlord to include a sublessor and a tenant to include a sublessee. (Administrative Code § Y51-3.0 [f], [m].) Therefore, the penalty provision for overcharges of the rent control laws applies in this case.
The evidence in the instant case clearly shows that peti-. tioner willfully overcharged respondent. Petitioner knew exactly what her maximum collectible rent was from the monthly rent bills she received from the landlord. The evidence also shows that she paid money to the superintendent of this building to keep him silent about the sublet arrangement.
The court has the discretion to determine the amount of damages to be assessed against the sublessor for overcharges but the amount shall not exceed three times the overcharge. (Administrative Code § Y51-11.0 [d] [2]; Golding v Bushek, 69 Misc 2d 370 [Civ Ct, NY County 1972].)
The court finds that respondent is entitled to damages pursuant to section Y51-11.0 (d) (2) but is not entitled to treble damages as provided by the Administrative Code since he did not come into court with clean hands. Respondent is an attorney and knew that this was a rent-controlled unit in 1980 when he sublet the apartment. He knew of the scheme to defraud the landlord and was a knowing participant of this illegal arrangement. Respondent also had knowledge in October 1983 that petitioner was paying money to the superintendent, and he chose to continue to pay the overcharge. Respondent should not get the best of both worlds, the comfort and benefit of this apartment, and full damages when he is an active participant of this scheme.
The fact that the subtenant is a knowing participant in the payment of rent overcharges does not affect the forfeiture of the rights of the prime tenant to the rental accommodation. (Continental Towers Ltd. Partnership v Freuman, 128 Misc 2d 680, supra.) However, the court can consider the subtenant’s involvement in the overcharge scheme in assessing overcharge damages to be awarded to a subtenant of a rent-controlled apartment. (Golding v Bushek, supra.)
*369 There is a two-year Statute of Limitations under section Y51-11.0 (d) (2) to recover overcharges. Respondent interposed his counterclaim for overcharges in February 1985.
The court finds that the reasonable rent for this apartment should be the regulated rent plus 10% of this amount as consideration for the furnishings in the apartment.
Based on the foregoing, the court calculates the amount petitioner overcharged respondent from February 1983 to February 1985 to be $10,431.
The court assessed as damages, against petitioner, the sum of $15,000. From this amount it shall be deducted rent owed by respondent to petitioner from July 1984 through July 1986.
The regulated monthly rental for this apartment in 1984 and 1985 was $322.18, and in 1986 is $329.26. Respondent owes petitioner rent in the sum of $2,126.38 for 1984; $4,252.77 for 1985 and $1,086.55 from January through July 31, 1986. Respondent has paid petitioner rent for April to July 1986, inclusively. The total rent respondent owes petitioner from July 1984 to July 1986 is in the sum of $7,465.70. This amount reflects a 10% increase the court has added to the regulated rent as provided in this decision. After deducting this amount from the damages and crediting respondent with the security deposit in the sum of $600 there is a balance of $8,134.30.
Accordingly, judgment is granted in favor of respondent against petitioner in the sum of $8,134.30.
Further, respondent is entitled to reasonable attorney’s fees pursuant to Administrative Code § Y51-11.0 (d) (2). (Golding v Bushek, 69 Misc 2d 370, supra.) The amount of reasonable attorney’s fees shall be determined by a hearing to be held in Part 18-D on September 24,1986 at 2:30 p.m.