[747 NYS2d 457]

BLF REALTY HOLDING CORP., Appellant, v STEVEN KASHER, Respondent.

First Department, September 19, 2002

**APPEARANCES OF COUNSEL**

*Susan Baumel-Cornicello* of counsel (*Cornicello & Tendler, LLP,* attorneys), for appellant.

*Lawrence Maggitti* of counsel (*Jeffrey S. Ween* on the brief; *Jeffrey S. Ween & Associates,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

Plaintiff, at all times relevant, has been the owner and landlord of the building at 54 North Moore Street in Manhattan, an interim multiple dwelling (IMD) as defined by article 7-C of the Multiple Dwelling Law (Loft Law) and the Rules and Regulations of the Loft Board contained in title 29 of the Rules of the City of New York. Defendant is a tenant who took occupancy of the sixth-floor loft in the premises pursuant to a written lease dated May 5, 1977 with plaintiff's predecessor in interest. Plaintiff seeks a declaration that defendant has illegally sublet the demised premises, in violation of the Loft Law, at an amount in excess of the legal regulated amount, and that such conduct constitutes a ground for eviction.

Defendant's lease, for a five-year term commencing June 1, 1977 and expiring May 31, 1982, provided for a fifth-year rental at $450 per month. Defendant's tenancy continued thereafter, and his rent increases were set by Loft Board Regulations (29 RCNY) § 2-06 (c) (1) (ii). In April 1990, defendant's rent was $551.22 per month. Under the terms of the lease, defendant could sublet with the landlord's consent, which was not to be unreasonably withheld. Ever since the building was first registered as an IMD, the sixth-floor loft, which contains approximately 2,300 square feet, has been listed as a single unit.

On May 1, 1990, defendant entered into a "Loft Share Agreement" with Suzanna Dent for the "northeast section of the loft," which consists of two thirds of the total space, or approximately 1,500 square feet and, according to defendant, began to share occupancy of the loft with her. Dent thereafter married and exclusively occupied her portion of the loft with her husband, Howard Patlis (collectively referred to hereafter as the subtenants), and their child.

According to plaintiff, defendant constructed separate entrances into the two sections. Plaintiff states that each had its own separate kitchen and bathroom, as well as buzzer and intercommunication system. It is undisputed that the two sections shared one hot water heater and electric meter. Plaintiff also claims that at the time defendant was paying the legally regulated rent of $551.22, he was charging Dent a monthly rental of $1,600 initially and, beginning in May 1992, $1,700.

The relationship between defendant and the subtenants deteriorated and the latter ceased paying rent in June 1994. De-

fendant served a notice to quit in January 1995. The parties thereafter entered into a settlement agreement dated April 20, 1995, whereby the subtenants were permitted to remain in temporary occupancy and, inter alia, agreed not to initiate an overcharge proceeding against defendant if he complied with the agreement and consented to the commencement of a licensee holdover proceeding against them, which defendant subsequently commenced. As an inducement to vacate, defendant agreed to an incentive payment for an early departure.

Thereafter, in May 1995, the subtenants commenced an action in Supreme Court, New York County, seeking the recovery of $62,000 in rent overcharges between May 1, 1990 and June 30, 1994, as well as treble damages and attorneys' fees.[1] That action was settled by a stipulation dated September 26, 1995 that incorporated the April 1995 settlement. The subtenants agreed to the entry of a judgment of possession with a stay of execution of the warrant.

On May 3, 1996, plaintiff served defendant with a five-day notice to cure alleging a sublet without the landlord's consent in violation of the Loft Board's regulations and the charging of rent in excess of the legal regulated amount, as well as illegal alterations to the premises. Thereafter, on June 28, 1996, plaintiff served a 30-day notice terminating the tenancy based solely on the illegal rent charged the subtenants. It commenced the instant declaratory judgment action on September 20, 1996. Defendant answered, interposing affirmative defenses including mootness based, apparently, on the subtenants' vacating the premises, that the shared occupancy of defendant's loft was permitted pursuant to Real Property Law § 235-f, and that the statutory and regulatory scheme under the Loft Law made no provision for an eviction based on rent overcharge.

Thereafter, in the course of motion practice, this action was transferred to the Civil Court pursuant to CPLR 325 (d). The parties moved and cross-moved for summary judgment, defendant arguing that the subtenants were, in fact, his roommates

---

1. Defendant makes the absurd argument that the overcharge action was a tactic used as a means of securing payment of the settlement sums provided for in the April 20, 1995 stipulation of settlement. Left unexplained is the obvious: why would anyone go to the trouble of preparing a seven-page summons and complaint, purchase an index number and arrange for service to ensure compliance with a stipulation of settlement, when the same result could be achieved by a one-page confession of judgment to be held in escrow pending compliance with the stipulation of settlement? Moreover, it appears that the index number was purchased before execution of the September 26, 1995 stipulation.

and that they had vacated the premises prior to the commencement of the action. Civil Court granted defendant's motion, finding that because he continued to occupy a portion of the loft no sublet had taken place and that, even if one had taken place, such a sublet was not in violation of the lease, which permitted subletting with the landlord's consent. Moreover, the court found that, unlike rent stabilization or rent control, where rent gouging by a protected tenant constitutes grounds for eviction, a loft tenant is not subject to eviction on such ground. The court refused to read the Loft Board's regulations in pari materia with the Rent Stabilization Law and Code because the Loft Law expressly mandates that the latter are not applicable until after an IMD is legalized, a certificate of occupancy issued and the tenant given a stabilized lease. Plaintiff's cross motion was denied. On appeal, the Appellate Term reversed, holding the transfer invalid because the "Civil Court lacked jurisdiction to adjudicate plaintiff's claims on a complaint for declaratory judgment." (183 Misc 2d 953, 954-955.) The action was thereafter restored to the Supreme Court calendar.

The parties again moved and cross-moved for summary judgment. Supreme Court denied plaintiff's motion, granted defendant's cross motion and dismissed the complaint. The court found an issue of fact as to whether the loft had been subdivided into two units and as to whether Dent and Patlis were defendant's roommates or subtenants, but held that neither issue mattered since, even assuming a sublet, the Rent Stabilization Code provisions permitting eviction for profiteering were not applicable to the Loft Law. The court noted that while the Rent Stabilization Code provisions that allow a landlord to evict on the basis of profiteering had been extended to rent-controlled apartments, these provisions could not be read in pari materia with the Loft Law, which does not provide such a remedy but, instead, allows the subtenant, in a case of overcharge, to sue the prime tenant for treble damages. Plaintiff appeals. We reverse.

There is a significant body of law that denies the protection of rent regulation to tenants who utilize their apartments for commercial exploitation. Rent-stabilized tenants who charge a subtenant more than the legal required rent are subject to lease termination. (*See* Rent Stabilization Code [9 NYCRR] § 2525.6 [b], [f]; § 2524.3 [h]; *Continental Towers Ltd. Partnership v Freuman*, 128 Misc 2d 680 [App Term 1st Dept].) Specifically, Rent Stabilization Code § 2525.6(b) prohibits a tenant

from charging a subtenant more than the legal rent, plus a 10% surcharge if the apartment is fully furnished. Where the tenant is in violation of this prohibition, Rent Stabilization Code § 2525.6 (f) entitles the owner to terminate the tenancy.[2] Rent Stabilization Code § 2525.7 (b) also prohibits a stabilized tenant from charging a roommate in excess of the roommate's proportional share of the stabilized rent. Rent profiteering in the latter circumstance may also entitle a landlord to maintain a holdover proceeding against the stabilized tenant. (*See RAM 1 LLC v Mazzola*, 2001 NY Slip Op 50073[U] [App Term 1st Dept].) Where there has been a substantial surcharge, the tenant cannot cure the lease violation. (*Continental Towers Ltd. Partnership v Freuman*, 128 Misc 2d at 681.)

In the case of rent control, while a tenant may not accept rent from a subtenant in excess of the lawful rent (*see* NY City Rent and Eviction Regulations [9 NYCRR] § 2205.1 [a]; City Rent and Rehabilitation Law [Administrative Code of City of NY] § 26-412 [a]), no provision exists entitling the landlord to commence an eviction proceeding for profiteering in such circumstances. Notwithstanding, courts have extended the rule that profiteering tenants who sublease their apartments forfeit their rights and are subject to eviction as tenants of rent-controlled apartments. (*See Hurst v Miske*, 133 Misc 2d 362.) Applying the holding of *Continental Towers Ltd. Partnership v Freuman* (128 Misc 2d 680, *supra*), the *Hurst* court noted, "This rationale should apply equally if not more to a rent-controlled tenant, who profits from her rental accommodation, since rent-controlled units are more stringently controlled than rent-stabilized units and * * * the rent-controlled tenant derives a higher benefit in rent regulation than that of a rent-stabilized tenant." (*Hurst v Miske*, 133 Misc 2d at 365.)

While there is no specific provision in the Loft Board's regulations authorizing eviction proceedings on the basis of rent gouging, the same reasoning as in the case of rent control should be applied to loft tenants who engage in similar exploitive conduct. Like the Rent Stabilization and Rent Control Laws, the stated intent of the Loft Law is to protect the public inasmuch as a "serious public emergency exists in the housing of a considerable number of persons in cities having a population of over one million, which emergency has been created by the increasing number of conversions of commercial and manufacturing loft buildings to residential use without compliance with ap-

---

2. Section 2525.6 (b) of the Rent Stabilization Code entitles the subtenant to treble damages as an additional penalty.

plicable building codes and laws" requiring governmental intervention to effectuate legalization and to "establish a system whereby residential rentals can be reasonably adjusted so that residential tenants can assist in paying the cost of such legalization without being forced to relocate." (Multiple Dwelling Law § 280.) Enactment of the Loft Law and regulations reflects an attempt to regulate the occupancy of commercial units used for residential purposes. The legislation has as its goal the eventual conversion of these loft buildings to Class A multiple dwellings and the integration of the rental units, known as IMD units—if occupied for residential purposes and covered by the Loft Law—into rent stabilization. (*See* Multiple Dwelling Law § 286 [3].) Surely, the Legislature could not have intended, as the Supreme Court ruled, that a covered loft tenant could profiteer on a sublet prior to the landlord's conversion of the building in compliance with the legalization requirements and the subsequent tender of a rent-stabilized lease only to have that opportunity taken away once the residential occupant becomes subject to rent stabilization. Such a result makes no sense.

Even before full compliance and legalization of the loft building, the Loft Board's regulations and the Rent Stabilization Law have substantially similar provisions and requirements with respect to subletting, the amount of rent that may be charged to a subtenant and the requirement of primary residency. For instance, under both Rent Stabilization Code § 2525.6 (a) and Loft Board Regulations § 2-09 (c) (4) (i), the right to sublet is subject to section 226-b of the Real Property Law, which sets the procedures and limitations of sublets. Rent Stabilization Code § 2525.6 (b) limits the amount of rent charged to a subtenant to the legal regulated rent plus no more than a 10% surcharge if the housing accommodation is fully furnished. Loft Board Regulations § 2-09 (c) (4) (ii) (A) similarly provides that the subtenant's rent may not exceed the legal rent, as established by Multiple Dwelling Law article 7-C and the regulations, plus a 10% surcharge for a fully furnished unit. Under Rent Stabilization Code § 2525.6 (a), a sublet is subject to the requirement that the tenant maintain the accommodation as his or her primary residence with the intent to occupy it as such at the lease's expiration, while Loft Board Regulations § 2-09 (c) (4) (ii) (B) requires, as a condition to subletting, that the residential occupant be able to establish that the unit is his or her primary residence.

The similarity between the two systems, Rent Stabilization and the Loft Law, with regard to subletting clearly supports

the premise that the penalty for a violation of the subletting regulations be similar as well. Despite the similarities, the Loft Law, like the Rent Control laws, is silent on the issue of eviction, whereas Rent Stabilization Code § 2525.6 (f) specifically provides an owner with the right to terminate the tenancy where a tenant sublets in violation of the provisions of the Code. Nevertheless, as already noted, the courts have extended the remedy of termination of a tenancy for a violation of the subletting regulations to apartments covered under rent control. (*See Hurst v Miske*, 133 Misc 2d 362, *supra*.) We see no rationale for not extending the same remedy to accommodations covered by the Loft Law, especially on a record such as the instant one, where the loft tenant charged the subtenants more than triple the lawful rent over a four-year period.

Since profiteering, in the context of both rent stabilization and rent control, constitutes an incurable ground for eviction, the same result should obtain under the Loft Law pursuant to the doctrine of in pari materia, since they speak on the same matter or subject. "[S]tatutes in pari materia are to be construed together and 'as intended to fit into existing laws on the same subject unless a different purpose is clearly shown.'" (*Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.*, 66 NY2d 298, 304, quoting *Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach*, 79 Misc 2d 438, 444, *affd* 48 AD2d 681, *affd* 39 NY2d 1029.)

In *Lower Manhattan*, the tenants argued that unlike the other rent regulation statutes governing rent control and rent stabilization,[3] article 7-C of the Multiple Dwelling Law does not make "primary residence" a condition to coverage and therefore the residency requirement should not apply to them. In rejecting this argument, the Court of Appeals determined that the absence of a primary residency requirement in the Multiple Dwelling Law did not render the requirement inapplicable, because statutes in pari materia, such as the Multiple Dwelling Law and the Rent Stabilization and Rent Control laws, are to be construed together. The court also recognized

**3.** The Emergency Housing Rent Control Law (McKinney's Uncons Laws of NY § 8582 [2] [*l*] [L 1946, ch 274, § 2, as amended]); the Emergency Tenant Protection Act of 1974 (ETPA) (McKinney's Uncons Laws of NY § 8625 [a] [11] [L 1974, ch 576, sec 4, § 5, as amended]); the Local Emergency Housing Rent Control Act (McKinney's Uncons Laws of NY § 8605 [L 1962, ch 21, sec 1, § 5, as amended]); the New York City Rent and Rehabilitation Law (Administrative Code of City of NY § Y51-3.0 [e] [2] [i] [10] [now § 26-403 [e] [2] [i] [10]) and the New York City Rent Stabilization Law of 1969 (Administrative Code § YY51-3.0 [a] [1] [f] [now § 26-504 [a] [1] [f]).

the illogic of imposing a primary residence requirement after a loft is legalized and brought under rent regulation (*see* ETPA § 5 [a] [11] [McKinney's Uncons Laws of NY § 8625 (a) (11)]) but not imposing the same requirement prior to legalization. The same reasoning should apply to rent gouging. Thus, we hold that the remedy of eviction is available against a loft tenant who charges a subtenant rent in excess of the legal regulated amount.

Nor does this record reveal an issue of fact as to deprive plaintiff of the remedy it seeks. In that regard, Supreme Court erroneously found an issue of fact as to whether Dent and Patlis were actually subtenants or, instead, roommates of defendant. As the record reflects, a physical inspection in August 1992 showed that the sixth-floor loft was configured into two separate units, with two separate doorways leading into the two units. Each had a separate bathroom and living space.[4] In fact, the plans annexed to defendant's moving papers depict a sixth floor configured into two separate units. A comparison with an earlier plan prepared in 1986 shows an additional bathroom, as well as a partition separating the two units. A subsequent inspection in the winter of 1997/1998 showed that a portion of the partition wall adjacent to the two bathrooms as well as a gas range had been removed. The removal of the wall restored the sixth floor to a single unit.

Although conceding, as he must, that there were two bathrooms, defendant denies that the loft was partitioned into two units, and that there were two kitchens. He argues that the two bathrooms and kitchen were shared areas, thus entitling him to the protection of Real Property Law § 235-f (3), which, in relevant part, provides that "[a]ny lease or rental agreement for residential premises * * * shall be construed to permit occupancy by * * * one additional occupant." Such an arrangement involves a tenant's sharing of the entire space with an additional occupant. Defendant cites, inter alia, *Handwerker v Ensley* (261 AD2d 190), *520 E. 81st St. Assoc. v Roughton-Hester* (157 AD2d 199, *supra*) and *Killington Investors v Leino* (148 AD2d 334) for the proposition that where the

---

4. It is, of course, irrelevant that only a portion of the sixth-floor loft was occupied by the subtenants since a sublease includes, by its definition, a transfer of part of the demised premises. A sublease is a "transfer by a tenant of * * * part of his estate or interest in the whole, or in a part, of the leased premises." (1 Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 9:2 [4th ed 1998]; *see 520 E. 81st St. Assoc. v Roughton-Hester*, 157 AD2d 199, 201.)

relationship is that of roommates, rent regulation is inapplicable. Defendant does not, however, come under the protection of Real Property Law § 235-f because section 235-f permits only one additional occupant, not, as was the case here, two.

Moreover, in the April 20, 1995 stipulation of settlement, defendant acknowledged that Dent and Patlis enjoyed exclusive occupancy of the northeast section of the loft and, on the condition that they comply with the stipulation, agreed to their continued occupancy until December 31, 1997 at the latest. Thus, contrary to the holding in the determination under review, there are no issues of fact for trial. Finally, we note, nowhere in the record does defendant deny the overcharge.

Accordingly, the judgment of the Supreme Court, New York County (Diane Lebedeff, J.), entered January 10, 2002, dismissing the complaint, should be reversed, on the law, with costs and disbursements, plaintiff's motion for summary judgment granted, defendant's cross motion denied, and a declaration made in plaintiff's favor.

WILLIAMS, P.J., SAXE, BUCKLEY and ELLERIN, JJ., concur.

Judgment, Supreme Court, New York County, entered January 10, 2002, reversed, on the law, with costs and disbursements, plaintiff's motion for summary judgment granted, defendant's cross motion denied, and a declaration made in plaintiff's favor.