■ In the Matter of 73 WARREN STREET, LLC, Appellant, v STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Respondents. [948 NYS2d 2]—

Judgment, Supreme Court, New York County (Judith J. Gische, J.), entered August 13, 2010, which denied the petition seeking to annul the determination of respondent State of New York Division of Housing and Community Renewal (DHCR) denying petitioner's application to deregulate a rent-stabilized apartment pursuant to the high-income rent decontrol provisions, and dismissed the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.

Petitioner is the owner of a residential building in which respondent Victor Schrager has rented an apartment since 1984. The building was not rent regulated until 1977, at which time it became rent-stabilized when petitioner began to receive J-51 tax benefits. It is undisputed that no lease received by Schrager ever advised him that his apartment was subject to regulation when the tax benefits expired, which they did in 1990.

Petitioner commenced a high-rent/high-income decontrol proceeding before DHCR, in which it requested that Schrager verify that his household income was less than $175,000 for the two preceding calendar years. The rent administrator denied the petition, stating that because petitioner became subject to the Rent Stabilization Law (RSL) (Administrative Code of City of NY § 26-501 *et seq.*) by virtue of receiving J-51 tax benefits, the exclusion from "luxury decontrol" codified at Administrative Code § 26-504.1 applied.

Petitioner sought administrative review of the order, arguing that the expiration of the J-51 tax benefits made the apartment eligible for luxury decontrol. It pointed to certain language in *Roberts v Tishman Speyer Props., L.P.* (62 AD3d 71 [2009], *affd* 13 NY3d 270 [2009]) that it claimed reflected this Court's view that the luxury decontrol exclusion only applies while a building is currently receiving J-51 benefits. Petitioner argued alternatively that Real Property Tax Law § 421-a (2) (f) (i) expressly allows for luxury decontrol of an apartment where the building became rent-stabilized as a result of receiving a tax abatement, notwithstanding the Administrative Code § 26-504.1 exclusion. DHCR denied the petition for administrative review, finding that the exclusion from luxury decontrol applies to those housing accommodations that became or become subject to the RSL and regulations "solely by virtue of the receipt of tax benefits"

pursuant to the J-51 program, even after the expiration of such benefits. DHCR rejected the applicability of *Roberts*, noting that in that case the J-51 benefits had not yet expired at the time of the dispute. As for petitioner's contention concerning RPTL 421-a (2) (f) (i), DHCR acknowledged that "those apartments which become subject to rent stabilization by virtue of the receipt of 421-a tax benefits do become eligible for luxury decontrol upon the expiration of those tax benefits." However, it noted that petitioner did not receive the tax benefits it enjoyed pursuant to that particular statutory scheme.

Petitioner commenced this proceeding to challenge the DHCR determination. It asserted that the determination was arbitrary and capricious, and contrary to law because it failed to recognize that, pursuant to *Roberts*, petitioner became entitled to apply for luxury decontrol when the J-51 benefits expired. It further urged that all of the various statutory provisions of the RSL applicable to buildings receiving an RPTL 421-a tax abatement should be read in pari materia with those applicable to buildings receiving a J-51 abatement, including the provision permitting luxury decontrol of apartments regulated by virtue of RPTL 421-a. DHCR and Schrager argued that both *Roberts* and the exception to the luxury decontrol prohibition contained in RPTL 421-a (2) (f) (i) were inapplicable and lent no support to petitioner's position that luxury decontrol was available to it.

The court denied the petition and dismissed it. It distinguished *Roberts*, noting that *Roberts* "did not answer the question about whether luxury decontrol would be available after the [tax] benefits [had] expired." It further reasoned that "[p]ursuant to RSL § 26-504.1, luxury decontrol does not apply to properties that are part of the 421-a program, except as provided in RPTL § 421-a (2) (f) (i) . . . [which] expressly permits luxury decontrol after the expiration of the benefit period," but that "there is no similar express provision for the J-51 program." The court determined that RPTL 421-a and 489 should not be read in pari materia, so that luxury decontrol is permitted upon the expiration of J-51 benefits, because the provisions do not concern the same subject matter, and because, in any event, the statutes are not ambiguous in providing that luxury decontrol is not available to building owners participating in the J-51 program.

Our standard of review on this appeal is whether DHCR acted in an arbitrary and capricious manner, in violation of lawful procedures, or in excess of its jurisdiction (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222 [1974]). This case turns on the meaning of several statutes and

regulations, and the deference we are required to give the agency extends to its interpretation of them (*see Matter of Salvati v Eimicke*, 72 NY2d 784, 791 [1988]; *Matter of Terrace Ct., LLC v New York State Div. of Hous. & Community Renewal*, 18 NY3d 446, 454 [2012]).

The first relevant statute to consider is Administrative Code § 26-504 (c), which provides, in pertinent part: "Upon the expiration or termination for any reason of the benefits of section 11-243[1] or section 11-244 of the code or article eighteen of the private housing finance law any such dwelling unit shall be subject to this chapter until the occurrence of the first vacancy of such unit after such benefits are no longer being received or if each lease and renewal thereof for such unit for the tenant in residence at the time of the expiration of the tax benefit period has included a notice in at least twelve point type informing such tenant that the unit shall become subject to deregulation upon the expiration of such tax benefit period and states the approximate date on which such tax benefit period is scheduled to expire, such dwelling unit shall be deregulated as of the end of the tax benefit period; provided, however, that if such dwelling unit would have been subject to this chapter or the emergency tenant protection act of nineteen seventy-four in the absence of this subdivision, such dwelling unit shall, upon the expiration of such benefits, continue to be subject to this chapter or the emergency tenant protection act of nineteen seventy-four to the same extent and in the same manner as if this subdivision had never applied thereto." Pursuant to this section, an apartment that becomes rent-stabilized upon the building owner's receipt of J-51 benefits remains stabilized upon the expiration of those benefits, except in two distinct instances: where the stabilized tenant vacates, or where the stabilized tenant had been consistently and properly notified in his leases that the apartment would become deregulated upon expiration of the tax benefits. The statute also provides that if the building was already regulated when the owner began to receive tax benefits, it continues to be regulated upon expiration of the tax benefits under the statutory scheme that initially gave rise to regulation. Here, it is undisputed that because Schrager is still in possession and was not given the requisite notices, the apartment continued to be rent-stabilized after the expiration of the J-51 benefits.

The second statute we must grapple with is Administrative Code § 26-504.1, enacted as part of the Rent Regulation Reform Act of 1993. It provides: "Upon the issuance of an order by the

---

1. J-51 benefits derive from this section.

division, 'housing accommodations' shall not include housing accommodations which: (1) are occupied by persons who have a total annual income, as defined in and subject to the limitations and process set forth in section 26-504.3 of this chapter, in excess of the deregulation income threshold, as defined in section 26-504.3 of this chapter, for each of the two preceding calendar years; and (2) have a legal regulated monthly rent that equals or exceeds the deregulation rent threshold, as defined in section 26-504.3 of this chapter. Provided, however, that this exclusion shall not apply to housing accommodations which became or become subject to this law (a) by virtue of receiving tax benefits pursuant to section four hundred twenty-one-a or four hundred eighty-nine of the real property tax law,[2] except as otherwise provided in subparagraph (i) of paragraph (f) of subdivision two of section four hundred twenty-one-a of the real property tax law, or (b) by virtue of article seven-C of the multiple dwelling law.'' This provision authorizes luxury decontrol for eligible stabilized apartments, with one important general exception; those apartments that are regulated ''by virtue of receiving tax benefits'' cannot be decontrolled based on income or the amount of the legal rent (we set aside for now the ''exception'' to the ''exclusion'' provided for in RPTL 421-a [2] [f] [i]).

Petitioner asserts that the exclusion contained in Administrative Code § 26-504.1 does not apply to Schrager's apartment. In so arguing, it attempts to read into the otherwise silent statute a caveat that ineligibility for luxury decontrol is limited to apartments that are *currently* receiving tax benefits. For this, it relies on certain of this Court's statements *Roberts v Tishman Speyer Props., L.P.* (62 AD3d 71 [2009], *supra*). In *Roberts*, we interpreted section 26-504.1 to provide that a building receiving J-51 tax benefits is subject to the luxury decontrol prohibition even if it was already subject to rent stabilization at the time it accepted the benefits. We stated that ''it is clear to us that the impact of the J-51 and rent stabilization statutes is that all apartments in buildings receiving J-51 tax benefits are subject to the RSL *during the entire period* in which the owner receives such benefits'' (62 AD3d at 81 [emphasis supplied]). Petitioner seizes on the emphasized language as support for its position that once J-51 benefits expire, a building is still subject to the RSL (except for apartments that are vacated or received the requisite notice under Administrative Code § 26-504 [c]) but not the luxury decontrol prohibition. We reject this interpretation.

---

**2.** This act enabled the institution of tax incentives to rehabilitate buildings, including the J-51 program.

First, on its face, the language only addresses the application of rent stabilization to buildings receiving tax benefits, and not the application of the luxury decontrol exclusion. Moreover, in *Roberts*, the building was still receiving J-51 benefits, and this Court had no reason to consider whether upon their expiration the owner could apply for luxury decontrol of individual apartments.

Petitioner further points out that in *Roberts* we stated that "the RSL provides that upon expiration of the J-51 tax benefit period, those apartments previously subject to regulation by other mechanisms continue to be covered 'to the same extent and in the same manner as if [the J-51 benefits] had never applied thereto (RSL § 26-504 [c])' " (62 AD3d at 83). Petitioner claims that the phrase " 'as if [the J-51 benefits] had never applied thereto' necessarily means that luxury decontrol would return as an available decontrol method once the benefits expired." This interpretation also is wrong. First, this Court was not construing Administrative Code § 26-504 (c) in *Roberts*. Rather, by quoting it, we were merely offering support for our point that "the overall statutory scheme [of subjecting buildings receiving tax benefits to rent regulation] . . . makes no distinction based on whether a J-51 property was already subject to regulation prior to the receipt of such benefits" (62 AD3d at 83). Further, and in any event, it is plain from the statute that the Legislature simply intended to provide that a building that is already regulated when it begins to receive J-51 benefits continues to be regulated for the original reason when the tax benefits expire and an apartment is vacated or a nonvacating tenant received the notice described in the section. Presumably, under those circumstances the owner could resort to luxury decontrol. However, here there was no vacatur or notice, so even if the building had been regulated before the receipt of tax benefits, that fact would be irrelevant.

Petitioner argues alternatively that, even if the exclusion from luxury decontrol continued after the J-51 benefits expired, the exception to the exclusion provided by Administrative Code § 26-504.1 applies. Again, that section states that luxury decontrol does not apply to buildings regulated by virtue of the receipt of tax benefits, "except as otherwise provided in subparagraph (i) of paragraph (f) of subdivision two of section four hundred twenty-one-a of the real property tax law, or . . . by virtue of article seven-C of the multiple dwelling law." Real Property Tax Law § 421-a provides an exemption from local taxes for new multiple dwellings. Subdivision (2) (f) (i) provides that after the expiration of the benefit, the building remains

regulated but the owner may seek to deregulate apartments based on luxury decontrol.

The subdivision is clear that it applies only to buildings exempted from taxes pursuant to RPTL 421-a. Nevertheless, petitioner argues that RPTL 421-a (2) (f) (i) should be construed to include buildings receiving tax benefits of any stripe, including J-51 benefits. It contends that the subdivision should be read in pari materia with RPTL 489, the enabling legislation for J-51 benefits, because both statutes advance a similar goal of encouraging the creation of residential housing, and both should be construed to provide the same system of advantages and disadvantages. Thus, the argument goes, if one scheme permits the owner to seek luxury decontrol notwithstanding the receipt of tax benefits, so should the other.

DHCR and Schrager argue that there is no need to compare the two statutory schemes because the Legislature, in enacting RPTL 421-a, said clearly that only buildings receiving tax benefits under that section are entitled to apply for luxury decontrol, and explicitly and purposely excluded buildings receiving J-51 benefits. In any event, they argue, the two statutory schemes are sufficiently distinctive that the doctrine of in pari materia does not apply. For example, they argue, the benefits under RPTL 421-a are essentially for residential buildings that come into being because of new construction, while J-51 benefits are essentially reserved for existing buildings that are substantially rehabilitated. They assert that it is not surprising that the Legislature permitted luxury decontrol for owners of the former type of building but not the latter.

"[S]tatutes in pari materia are to be construed together and as intended to fit into existing laws on the same subject unless a different purpose is clearly shown" (*BLF Realty Holding Corp. v Kasher*, 299 AD2d 87, 93 [2002] [internal quotation marks omitted], *lv dismissed* 100 NY2d 535 [2003]). However, "[t]he general rule that the meaning of a statute may be determined from its construction in connection with other statutes *in pari materia* is not one of universal application, but is resorted to only in search of legislative intent; and the rule cannot be invoked where the language of the statute is clear and unambiguous" (McKinney's Cons Laws of NY, Book 1, Statutes § 221 [a], Comment, at 376). This rule of construction does not apply here because the legislative intent is clear. Administrative Code § 26-504.1 expressly states that, generally, luxury decontrol shall not apply to buildings that are stabilized because of their receipt of tax benefits pursuant to either the RPTL 421-a program or the J-51 program. However, the exception to this

exclusion refers to the former only. A strong assumption can be made that had the Legislature meant to create an exception to the prohibition for both types of tax benefit programs, it would have done so. Further, if the exception were to be construed to apply to both tax benefit schemes, then the exception would entirely swallow the rule and render the exclusion meaningless. Well established rules of statutory construction require the avoidance of such a result (*see Canal Carting, Inc. v City of N.Y. Bus. Integrity Commn.*, 66 AD3d 609, 611 [2009], *lv denied* 14 NY3d 710 [2010]). Because the legislative intent is clear, we need not address petitioner's argument that the statutory schemes underlying RPTL 421-a tax benefits and J-51 tax benefits are substantially similar.

DHCR's interpretation of the relevant statutes was rational. Accordingly, the court properly upheld its determination denying the petition for administrative review of the order dismissing the high-rent/high-income decontrol proceeding. Concur—Mazzarelli, J.P., Catterson, Renwick, Abdus-Salaam and Manzanet-Daniels, JJ. **[Prior Case History: 2010 NY Slip Op 31955(U).]**