520 EAST 81ST STREET ASSOCIATES, Appellant-Respondent, v PEGGY ROUGHTON-HESTER, Respondent-Appellant, et al., Respondents.

First Department, May 10, 1990

APPEARANCES OF COUNSEL

*Sherwin Belkin* of counsel *(Magda L. Cruz* with him on the

brief; *Belkin Burden Wenig & Goldman,* attorneys), for appellant-respondent.

*Harry Kresky* for respondent-appellant.

### OPINION OF THE COURT

ROSENBERGER, J.

Peggy Roughton-Hester became the tenant of apartment 14-T, a rent-stabilized L-shaped studio apartment located at 520 East 81st Street, Manhattan, in 1975, and has shared the apartment, from time to time, with a number of individuals whom she termed roommates, over the years. Her most recent roommate, Carla Bell, moved into the apartment in January of 1988 and agreed to pay Roughton-Hester $600 a month for rent, utilities, furniture and household supplies. She also gave Roughton-Hester a $600 security deposit. According to Roughton-Hester's lease, which had been renewed periodically, the stabilized rent for apartment 14-T was $398.16 a month when Bell moved in. Roughton-Hester therefore netted a profit from sharing her apartment with Bell.

After the landlord learned of Roughton-Hester's financial arrangement with Bell, it served notice informing Roughton-Hester that she had 10 days to cure the violations of her tenancy. The purported violations included assigning or subletting the apartment to Bell without obtaining the prior written consent of the landlord and overcharging Bell for the use of the premises. Roughton-Hester claimed to have cured the violations by refunding money to Bell, but the landlord, based on a claimed failure to cure the violations, instituted this holdover proceeding. After concluding that Roughton-Hester and Bell had a partial sublet/roommate arrangement, the Civil Court (Tom, J.) denied Roughton-Hester's motion to dismiss the petition on the ground that the rent overcharge violated the Rent Stabilization Law (Administrative Code of City of New York § 26-510 *et seq.*).

The landlord thereafter moved for summary judgment and a warrant of eviction while the tenant cross-moved for summary judgment dismissing the petition. The Civil Court (Ryp, J.), in denying the landlord's motion and granting the tenant's cross motion, found that since Bell was a roommate and not a subtenant, the landlord was "not in privity to enforce" the roommates' financial agreement. Appellate Term reversed and granted the landlord's motion for summary judgment. The court agreed with Judge Tom that Roughton-Hester had par-

tially sublet the apartment to Bell in breach of an obligation of her tenancy. Although the breach was not found to have been timely cured by Bell having vacated the premises and having received restitution from Roughton-Hester, Appellate Term concluded that forfeiture of the tenancy was unwarranted and permanently stayed the issuance of the warrant of eviction.

On appeal, the landlord contends, *inter alia,* that since profiteering under a sublease is illegal, Roughton-Hester should not be permitted to profit from partially subletting the apartment under the guise of a roommate arrangement. Roughton-Hester, on the other hand, maintains that she did not sublet her apartment and that no law permits a landlord to evict a tenant for making a profit on the rent charged a roommate. A review of the relevant statutes, regulations, legislative history and case law supports the tenant's position.

Evidence that third parties occupied the premises, standing alone, does not establish a subletting *(Killington Investors v Leino,* 148 AD2d 334). The record reveals that Roughton-Hester never vacated the premises but instead continued to live in the one-room apartment with Bell. Both had access to the entire living area, kitchen and bathroom. The main room contained one bed that folded up and another that pulled out from the wall. No partitions separated the room into different living quarters.

"[A] sublease is a transfer by a tenant of only *part* of his estate or interest in the whole, or in a part, of the demised premises, with the reservation unto himself of a reversionary interest in the leasehold estate" (1 Rasch, New York Landlord & Tenant—Summary Proceedings § 177, at 245 [2d ed]; *see also, New Amsterdam Cas. Co. v National Union Fire Ins. Co.,* 266 NY 254). Section 2520.6 (k) of the Rent Stabilization Code (9 NYCRR) defines subtenant or sublessee as "[a]ny person lawfully occupying the housing accommodation pursuant to an agreement with the tenant by authority of the lease or by virtue of rights afforded pursuant to section 226-b of the Real Property Law." Section 226-b, also known as the Sublet Law, prohibits a tenant from assigning a lease or subletting an apartment in the absence of the written consent of the owner. An "occupant", however, as defined by section 2520.6 *(l)* of the Rent Stabilization Code, is "[a]ny person occupying a housing accommodation as defined in and pursuant to section 235-f of the Real Property Law. Such person shall not be considered a tenant for the purposes of this Code." Section 235-f (1) (b), the

Roommate Law, defines "occupant" as a "person, other than a tenant or a member of a tenant's immediate family, occupying a premises with the consent of the tenant". Subdivision (2) prohibits a landlord from restricting the occupancy of such premises to a tenant or tenants or to such tenants and immediate family.

It is clear that Roughton-Hester and Bell were roommates and that there was no partial sublet of the apartment *(Sea-view-Atlas Mfg. Co. v Fonville,* NYLJ, Apr. 19, 1989, at 23, col 4 [occupants of two-bedroom penthouse held to be "room-mates" under Real Property Law § 235-f]; *cf., Diamond v Menasche,* 141 Misc 2d 899 [occupants had separate bedrooms; dispute as to whether other areas of apartment were restricted to separate use and occupancy]; *Lomax Holding Co. v Calitri,* 117 Misc 2d 941 [where tenant provided landlord with notice that he intended to sublet his three-bedroom apartment to two other unrelated persons, court found a sublet]; and similarly, *Continental Towers Ltd. Partnership v Freuman,* 128 Misc 2d 680).

Although section 26-511 (c) (2) and section 26-512 of the Administrative Code of the City of New York restrict the amount of rent an owner may charge for an apartment, the Administrative Code is silent as to the amount a leaseholder occupant may charge another occupant of the same apartment. Section 2520.6 (i) of the Rent Stabilization Code defines an "owner" as "[a] fee owner, lessor, sublessor, assignee, net lessee, or a proprietary lessee of a housing accommodation in a structure or premises owned by a cooperative corporation or association, or an owner of a condominium unit or the sponsor of such cooperative corporation or association or condominium development, or any other person or entity receiving or entitled to receive rent for the use or occupation of any housing accommodation". The lease for apartment 14-T was signed by Roughton-Hester and the landlord. The landlord, not Roughton-Hester, was the entity "entitled" to receive rent for the apartment.

Additional support for the conclusion that a landlord may not evict a tenant for "profiteering" with respect to the rent charged a roommate can be found in the intent of the Legislature as expressed at the time of the amendment to the Emergency Tenant Protection Act (Omnibus Housing Act of 1983, L 1983, ch 403). The Legislature enacted separate provisions pertaining to subtenants and roommates and specifically indicated its intention to eliminate profiteering in subleases

while remaining silent as to such practices committed by a tenant vis-à-vis a roommate.

Specifically, the history of the legislation reveals that the lawmakers were concerned over the confusion created by then existing laws and judicial decisions with regard to the rights of tenants to sublet or assign leases and were proposing this new legislation to prohibit speculative and profiteering practices on the part of certain leaseholders, "leaving many *subtenants* without protection and removing many housing accommodations from the normal open housing market" (Ominibus Housing Act of 1983, L 1983, ch 403, § 1; emphasis added).

In a separate paragraph, the Legislature criticized judicial decisions which refused to extend the protection of the human rights law to unrelated persons sharing a dwelling for "reasons of economy, safety and companionship" (L 1983, ch 403, § 1). The Roommate Law was therefore being enacted to protect all residential tenants from eviction because of their life-style *(Sherwood Vil. Coop. A. v Slovik,* 134 Misc 2d 922). The legislation was passed to "prevent uncertainty, potential hardship and dislocation of tenants living in housing accommodations subject to governmental regulations as to rentals and continued occupancy as well as those not subject to such regulation" (Omnibus Housing Act of 1983, L 1983, ch 403, § 1).

Unlike the section pertaining to sublets, the paragraph in which the Legislature introduced the Roommate Law stresses the need to permit such living arrangements to continue and does not mention the elimination of speculation and profiteering as a purpose underlying the enactment of the statute *(Seaview-Atlas Mfg. Co. v Fonville, supra).* We conclude that this omission was deliberate and decline to impose the restrictions against profiteering in sublet situations to living arrangements involving roommates *(see, Sullivan v Brevard Assocs.,* 66 NY2d 489).

The landlord contends that the Legislature envisioned a roommate paying no more than his or her per capita share of the rental. Such an interpretation cannot be gleaned from the legislative history or from the language of the statute itself. The landlord's interpretation of the statute also ignores the fact that many "roommates" are not strangers but individuals who choose to live together, apportioning the costs according to their respective financial abilities, and other considerations.

In sum, neither the lease nor any law governing rent-stabi-

lized apartments permit a landlord to evict a tenant for earning a profit from the rent charged a roommate *(Schneller v Moed,* 128 Misc 2d 885).

We have considered the petitioner's remaining contentions and find them to be without merit.

Accordingly, the order of Appellate Term, entered August 9, 1989, which reversed the judgment of the Civil Court, New York County (Norman Ryp, J.), entered March 22, 1989, and granted petitioner's motion for summary judgment while permanently staying the issuance of the warrant of eviction should be modified, on the law and the facts, by denying petitioner's motion for summary judgment and granting respondent's cross motion for summary judgment dismissing the petition, without costs.

MURPHY, P. J., CARRO, KASSAL and SMITH, JJ., concur.

Order, Appellate Term of the Supreme Court, First Department, entered on or about August 9, 1989, unanimously modified, on the law and the facts, by denying petitioner's motion for summary judgment and granting respondent's cross motion for summary judgment dismissing the petition, without costs and without disbursements.