OPINION OF THE COURT
Douglas E. Hoffman, J.
This matter comes before the court upon respondent’s mo *478 tion and petitioner’s cross motion for summary judgment. Alternatively, petitioner cross-moves, pursuant to CPLR 408, for an order permitting it to depose two nonparty witnesses (Susanna Dent and Howard Patlis, alleged subtenants herein), and for an order, pursuant to RPAPL 745 (2), compelling payment of use and occupancy pendente lite.
HISTORY
BLF Realty Holding Corp. originally commenced this proceeding as a declaratory judgment action in Supreme Court by filing a summons and complaint dated September 20, 1996. In that action, plaintiff (petitioner herein) sought a judgment declaring that: (1) defendant (respondent herein) Steven Kasher illegally sublet the subject loft premises at 54 North Moore Street, 6th Floor, New York City in violation of 29 RCNY 2-09 (c) (4) (i) and (ii) (A) and that said violation cannot be cured; and (2) defendant charged an illegal rental amount in violation of 29 RCNY 2-09 (c) (4) (ii) (A) and that such violation constitutes a ground for eviction. By order dated September 3, 1997, Honorable Lorraine S. Miller transferred the action to the Civil Court of the City of New York “as if originally brought therein but subject to the provisions of CPLR § 325 (d).”
FACTS
The subject apartment is located in an interim multiple dwelling within the meaning of Multiple Dwelling Law article 7-C. Respondent took possession of the subject premises on or about June 1, 1977, pursuant to a lease with petitioner’s predecessor in interest dated May 5, 1977. The agreement defines the leasehold as the “6th floor loft in the building known as 54 North Moore Street in the Borough of Manhattan.” Respondent alleges that he has occupied the apartment at all times since the commencement of the lease as a residence and working space. In or about May 1990, respondent began to share his loft space with Susanna Dent (Dent). Under the terms of a “loft share agreement”, Dent occupied the northeast portion of the space and respondent occupied the southwest portion. During the period of time when the apartment was shared, respondent alleges that the apartment retained its single entrance, a single kitchen, common plumbing, hot water heater, and bathtub. Respondent also alleges that he and Dent shared common household appliances such as heaters, vacuum cleaners, ladders and tools.
*479 Petitioner alleges that respondent subdivided the 2,300 square foot sixth floor loft into two separate and distinct living units, and charged a rental of $1,700 per month for the 1,500 square foot northeast portion while the legal regulated rent was actually $551.22 per month. Landlord’s president, based on alleged personal observation, disputes the assertion that respondent and Dent were living in a communal setting, and avers instead that the interior of the loft was partitioned into two separate and distinct units with two kitchens, two bathrooms, and two buzzer and intercom systems. Petitioner concedes that the loft has a single electrical meter and a single water line leading to the floor. However, petitioner argues that the “loft share agreement” limited Dent’s occupancy to the northeast section of the loft and that this restriction belies the notion that respondent and Dent were occupying the loft as roommates.
In or about 1992, Dent married Howard Patlis (Patlis) and the living arrangement with respondent thereafter became strained to such an extent that respondent commenced a court proceeding to remove the couple. The parties settled the matter by stipulation in which Dent and Patlis agreed to move within two years, with the option of obtaining a cash incentive to vacate earlier. To ensure that Kasher would honor his obligations under this agreement, Dent and Patlis commenced a plenary action for rent overcharge against respondent, with the understanding that they would withdraw the proceeding with prejudice provided that respondent complied with the terms of the agreement. Respondent alleges that Dent and Patlis vacated the apartment prior to commencement of the Supreme Court proceeding in September 1996. Landlord’s president disputes this allegation, claiming that he observed the couple vacating the loft in November 1996. Respondent is now in possession of the entire space.
In May 1996 the landlord served respondent with a five-day notice to cure based on the alleged illegal sublet, charging a sublet fee in excess of the legal regulated rent, and making alterations in contravention of the landlord’s legalization plan. By 30-day notice dated June 28, 1996, landlord terminated the tenancy on a more limited basis, “the illegal rent collected from * * * unauthorized subtenants, Susanna Dent and Howard Patlis.” Thereafter, by summons and complaint dated September 20, 1996, landlord commenced the Supreme Court action. Respondent’s answer in the Supreme Court action raised several issues, including failure to state a cause of action, and a *480 defense under Real Property Law § 235-f, commonly referred to as the “roommate law”. As noted, supra, the proceeding was subsequently transferred and is now before this court on respondent’s motion and petitioner’s cross motion.
DISCUSSION
Even if the court accepts as true petitioner’s assertions concerning the description of the living space and the arrangements among respondent, Dent and Paths, respondent is entitled to summary judgment. First, as a matter of law, no sublet has occurred. Respondent, Dent and Paths occupied the leasehold space as roommates, rather than as subtenants, in light of the contemporaneous nature of the occupancy. There is no legal significance to the manner in which the space was occupied or subdivided. In loft as well as nonloft apartments, a tenant is tree to have roommates and to make agreements as to which portions of the leasehold space each person will use exclusively and which portions each person will share or use communally. Each occupant is free to exclude the other from space which is reserved for exclusive use. A loft, by definition, is raw, open space and the tenant therein is free to install fixtures suited to his or her needs. Indeed, the Loft Board Regulations contemplate the installation of such fixtures and their future sale. (Multiple Dwelling Law § 286 [6]; see also, 577 Broadway Real Estate Partners v Giacinto, 182 AD2d 374 [1st Dept 1992].) Petitioner has cited no authority, and the court could find none, which would preclude a loft tenant from installing fixtures dividing the living space into two self-contained units, one of which would be occupied exclusively by the tenant and the other by a roommate.
There is also no authority for the proposition that a tenant must occupy an entire leasehold at all times during the course of the tenancy. A central characteristic of a lease is the surrender of absolute possession and control of property to another for an agreed-upon rental. (Feder v Caliguira, 8 NY2d 400 [I960].) The essential terms of a lease include the area which is surrendered, the duration of the surrender and the price to be paid. (Bernstein v 1995 Assocs., 185 AD2d 160 [1st Dept 1992].) Thus, for example, where a tenant occupies one of two living units located within a single leasehold, that leasehold, despite its division into two, constitutes the primary residence of that tenant. Such a person cannot be evicted from that portion of the leasehold contemporaneously occupied by another on the basis of nonprimary residence. Here, the prop *481 erty or area which was surrendered by lease to respondent consisted of the “6th floor loft in the building known as 54 North Moore Street in the Borough of Manhattan” (see, lease agreement, dated May 5, 1977). Regardless of whether respondent, Dent, and Patlis occupied separate and distinct living areas within the leasehold space, petitioner leased the entire space to respondent as one leasehold under one lease agreement and for one rental amount. Because the parties treated this loft as a single space for purposes of the lease, the court is also required to consider the space as one leasehold. (Empire Props. Corp. v Manufacturers Trust Co., 288 NY 242 [1942].) Thus, as a tenant who occupies a portion of a loft is considered a primary resident of the entire space, respondent is deemed an occupant of the entire space because of his contemporaneous occupancy with Dent and Patlis, and therefore he should not forfeit the tenancy on the basis of illegal sublet.
Second, even if respondent’s living arrangements were deemed a sublet, respondent had the contractual right to sublet without limitation as to the duration of the term of the sublease. Paragraph 50 of the subject loft lease, the authenticity of which is uncontroverted, states: “The landlord will not unreasonably withhold its consent to an assignment or subletting of the whole or a part of the demised premises, provided that tenant gives landlord thirty (30) days written notice of the same. It is understood that no sub-let or assignment shall in no way release tenant from any obligation of this lease.” A sublease commenced during the ownership of petitioner’s predecessor in interest would bind the petitioner herein under paragraph 37 of the May 5, 1977 lease. Thus, contrary to petitioner’s assertion in the May 3, 1996 notice to cure, a sublet, if such were found, would not violate a substantial obligation of respondent’s tenancy.
Third, with respect to petitioner’s claim that respondent engaged in profiteering during the term of his sublease, an allegedly incurable breach of a substantial obligation of his tenancy, the court’s holding, supra, that as a matter of law respondent did not sublet to Dent and Patlis, precludes any relief to petitioner. Where the occupancy arrangement is a sharing of a single leasehold, no cause of action for rent overcharge or profiteering can be asserted. (520 E. 81st St. Assocs. v Roughton-Hester, 157 AD2d 199 [1st Dept 1990]; Seaview-Atlas Mfg. Co. v Fonville, NYLJ, Apr. 19, 1989, at 23, col 4 [Civ Ct, NY County], affd as mod NYLJ, June 28, 1990, at 25, col 2 [App Term, 1st Dept]; Vidod Realty Co. v Calvin, 147 Misc 2d 488 [Civ Ct, NY County 1989].)
*482 Fourth, assuming, for purpose of argument, that respondent’s living arrangements with Dent and Patlis constituted a sublet, petitioner still has no cause of action. The Loft Board Regulations are similar to the Rent Stabilization Code (RSC) (9 NYCRR parts 2520-2530) inasmuch as both permit sublets only where the rental amount charged is the legal regulated rent plus an additional 10% surcharge where the sublet is furnished. (9 NYCRR 2525.6 [b]; 29 RCNY 2-09 [c] [4] [ii] [A].) However, the Loft Board Regulations, unlike the RSC, do not provide a landlord with a cause of action for eviction on the basis of profiteering, but instead relegate the subtenant to a cause of action against the prime tenant for treble damages. (See, 9 NYCRR 2524.3 [h]; 29 RCNY 2-09 [c] [4] [ii] [E].) As grounds for eviction the Loft Board Eviction Regulations provide (i) nonprimary residence; (ii) nuisance; and (iii) any ground for eviction specified in the Real Property Law or Real Property Actions and Proceedings Law. (29 RCNY 2-08 Q] [1].) Profiteering is not specified as a ground for eviction in either the Real Property Law or RPAPL, and no court has yet recognized such a cause of action for sublet profiteering in loft apartments. (See, Ariel Assocs. v Brown, NYLJ, Sept. 18, 1997, at 29, col 5 [Civ Ct, NY County].) Furthermore, 29 RCNY 2-09 (c) (4) (ii) (A), which proscribes sublets for amounts which exceed the legal regulated rent plus 10% for furnished sublets, does not apply to alleged subleases, as in the instant case, entered into on or after July 27, 1987, but before November 23, 1992. (29 RCNY 2-09 [c] [4] [ii] [G].)
Finally petitioner argues that the sublet provisions of the Loft Board Regulations should be read in pari materia with the Rent Stabilization Code and that the court should require a forfeiture of the tenancy on the basis of profiteering since it is undisputed that respondent has charged Dent and Patlis an amount that exceeds the legal regulated rent plus the additional 10% surcharge. Assuming, arguendo, that a sublet were found to exist, the Loft Law expressly states that the rent and eviction regulations as set forth in the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4) and RSC are not applicable until after an interim multiple dwelling is legalized, a certificate of occupancy is issued, and tenants are given rent-stabilized leases. (Multiple Dwelling Law § 286 [3]; 165 W. 26th St. Assocs. v Folke, 131 Misc 2d 867 [Sup Ct, NY County 1986].) Since these prerequisites have not been satisfied, the rent charged to the alleged loft subtenant, even if improperly high under the RSC, would not provide a basis for eviction of the loft tenant.
*483 Accordingly, respondent’s motion for summary judgment is granted and petitioner’s cross motion for summary judgment is denied. Those branches of petitioner’s cross motion seeking use and occupancy pendente lite and leave to conduct depositions are denied as moot.