OPINION OF THE COURT
Peter M. Wendt, J.
*739 Petitioner commenced the instant holdover summary proceeding seeking possession of the subject premises which are subject to the provisions of article 7-C of the Multiple Dwelling Law (commonly known as the Loft Law) on the ground that the respondent allegedly charged his former co-occupant or “roommate” rent in excess of that which he was lawfully permitted to charge. Petitioner argues that Rent Stabilization Code (9 NYCRR [RSC]) § 2525.7 (b), which prohibits tenants of rent-stabilized apartments from charging persons in occupancy pursuant to Real Property Law § 235-f (i.e., roommates) rent in excess of their proportionate share of the legal regulated rent, should be applied in this case. Petitioner argues that the Loft Law is in pari materia with the Rent Stabilization Law and regulations, and that therefore the above-referenced provision of the Rent Stabilization Code is applicable to the premises herein which is subject to the Loft Law.
Respondent, a tenant and resident of the subject premises for over 33 years, moves for dismissal pursuant to CPLR 3211 (a) (7) based on failure to state a cause of action and for summary judgment pursuant to CPLR 3212. Respondent contends that the prohibition against charging a co-occupant more than a proportional share of the rent contained in RSC § 2525.7 (b) does not apply to the subject premises, which is not a rent-stabilized apartment but is a loft covered by the Loft Law. Respondent contends that overcharging a roommate is not a valid ground to evict a tenant of a unit covered by the Loft Law.
Respondent concedes that another co-occupant, one Kahako Terakawa, occupied the apartment along with respondent for a period of over five months from February 20, 2004 until approximately July 31, 2004 and that respondent charged and collected from Ms. Terakawa an amount equal to the legal regulated monthly rent ($587.28) during that period. Respondent alleges that he subsequently refunded to Ms. Terakawa half of the rent collected from her, and provides copies of a cancelled check and receipt dated September 19, 2004 showing that he refunded a sum of $1,572.36 to Ms. Terakawa.
Respondent claims that he had not intended to live in the apartment with Ms. Terakawa, but had intended to sublet the apartment to her while he was on a planned trip to Japan. He claims that he decided to sublet the apartment because he needed someone to take care of his pet while he was away. He claims that this arrangement did not work out, that Ms. Terakawa turned out to be an unsuitable person to care for his pet. *740 Accordingly, respondent claims that he cancelled his trip to Japan. Respondent claims that he asked Ms. Terakawa to leave the apartment but she refused to do so and claimed that she was entitled to stay there for six months. He claims that she continued to pay and he continued to accept the monthly rent from her. Respondent claims he eventually served a termination notice on her and she moved out. Respondent claims that he did not know that he could not collect the full monthly rent from Ms. Terakawa, and when he learned of this he immediately refunded the money to her in order to protect his tenancy.
There is no provision in the Loft Law or regulations prohibiting the conduct respondent is accused of, i.e., charging a “roommate” rent in excess of the proportionate share of the legal rent. Neither is there any provision in the Loft Law or regulations giving the landlord a cause of action to evict a tenant for the conduct respondent is charged with. Landlord asks the court to manufacture a cause of action for eviction of a loft tenant for charging a co-occupant roommate rent in excess of her proportionate share of the lawful rent, although there is no basis in either the statute or any regulation providing for such a cause of action. There is simply no basis whatever for the landlord’s claimed cause of action.
While the Rent Stabilization Code was amended by the Division of Housing and Community Renewal (DHCR) in December 2000 to add RSC § 2525.7 (b), which prohibits rent-stabilized tenants from charging co-occupants more than a proportionate share of the legal rent, this section applies to rent-stabilized tenants but does not apply to units regulated by the Loft Law.
Certainly the DHCR could not have promulgated a regulation applicable to loft tenants because DHCR does not have jurisdiction over loft tenants. The court cannot and shall not rectify any perceived omission on the part of the Loft Board in not promulgating such a regulation. It simply did not do so. The court must presume it intentionally did not do so.
The Appellate Term, First Department, has declined to interpret RSC § 2525.7 (b) to provide a cause of action to evict a rent-controlled tenant for charging a roommate a disproportionate share of the legal rent. In 270 Riverside Dr., Inc. v Braun (4 Misc 3d 77 [App Term, 1st Dept 2004]), the court held that because there is no rent-control regulation parallel to RSC § 2525.7 (b) and, more critically, no rent-control provision authorizing eviction of rent-controlled tenants on this ground, the landlord did not have any basis to evict a rent-controlled tenant on this ground.
*741 The 270 Riverside Dr., Inc. v Braun decision noted that “[t]he restrictions against profiteering in sublet situations have traditionally not been applied to living arrangements involving roommates” (4 Misc 3d at 78-79, citing 520 E. 81st St. Assoc. v Roughton-Hester, 157 AD2d 199 [1st Dept 1990]). The court noted that prior to promulgation of ESC § 2525.7 (b) it was the firm rule of this department that “[t]here is no cause of action for rent profiteering with respect to a roommate.” (Id. at 79, quoting Handwerker v Ensley, 261 AD2d 190, 191 [1st Dept 1999].) The court held that, in light of this history, for charging a roommate a disproportionate rental amount to be a basis to evict a rent-controlled tenant, the governing regulations should affirmatively so state.
The Court in Roughton-Hester (decided before ESC § 2525.7 [b] was promulgated), based on the legislative history of the sublet and roommate laws, concluded that it should not extend to tenants who “rent” to roommates the restrictions against profiteering in sublet situations. The Court noted that, while the legislative history surrounding the sublet restrictions indicated an intent to eliminate speculation and profiteering in subletting arrangements, no such purpose was expressed in enacting the roommate law. The Court noted that the Legislature in enacting the roommate law criticized judicial decisions which refused to extend protection of the Human Eights Law to unrelated persons sharing a dwelling for “reasons of economy, safety and companionship.” (Roughton-Hester at 203.) Accordingly, the Court recognized that the “roommate law” was enacted to protect residential tenants from eviction because of their lifestyle.* The Court acknowledged that many “roommates” are not strangers but individuals who choose to live together, apportioning the costs according to their respective financial abilities and other considerations. The Court held that there is no law governing rent-stabilized apartments which permits a landlord to evict a tenant for earning a profit from the rent charged a roommate.
While the Eent Stabilization Code has been amended since Roughton-Hester to prohibit overcharging a roommate, it is still the case that there is no support in the Loft Law or regulations or its legislative history to authorize a cause of action for eviction of a loft tenant for charging a roommate more than a proportionate share of the legal rent. Thus the interpretation *742 applied in 270 Riverside Dr., Inc. v Braun limiting evictions for overcharging a roommate to cases where there is specific regulatory authority for such a cause of action is equally applicable here, if not more so.
The holding in BLF Realty Holding Corp. v Kasher (299 AD2d 87 [1st Dept 2002]) cannot be construed to sanction evictions of loft tenants for charging a roommate a disproportionate share of rent. BLF Realty Holding Corp. v Kasher did not involve a roommate situation, but involved a sublet of a reconfigured portion of the subject premises. In Kasher, the Court interpreted the interplay between the Rent Stabilization Law and Code and the Loft Law involving sublet situations. The Court noted that while the Loft Law and regulations do not contain a cause of action for eviction for violating the subletting laws, they do contain restrictions on rent overcharges to sublessees and other requirements similar to those in the Rent Stabilization Law and Code regarding subletting. The court in 270 Riverside Dr., Inc. v Braun (4 Misc 3d 77 [App Term, 1st Dept 2004]) distinguished BLF Realty Holding Corp. v Kasher on this basis, because the Rent Control Act and the New York City Rent and Eviction Regulations contain no such restrictions regarding rent charged to roommates. Similarly, the Loft Law and regulations contain no such restrictions.
The Court in Kasher noted the substantial precedent holding that profiteering in subletting arrangements, in the context of both rent stabilization and rent control, constitutes an incurable ground for eviction. Based on the similarities in the subletting rules of the two systems and the facts before it involving a loft tenant who charged the subtenants approximately triple the legal rent for a four-year period, the Court concluded that a cause of action for eviction for violation of the subletting overcharge restrictions should pertain.
Unlike the similar sublet restrictions involved in BLF Realty Holding Corp. v Kasher, the Loft Law and regulations do not contain any provision regulating the rent to be charged a roommate paralleling RSC § 2525.7 (b). Nor is there any underlying statutory basis for such a regulation in the Loft Law.
Moreover, here the alleged overcharge does not rise to the level of profiteering present in BLF Realty Holding Corp. v Kasher, and was fully refunded to Ms. Terakawa. The court in 270 Riverside Dr., Inc. v Braun found that, even assuming that the remedy of eviction had been available in that case, it would hold that the overcharge of the “roommates” therein, who were *743 charged an aggregate sum of $1,270, in excess of the legal regulated rent of $1,192, did not rise to the level of an incurable violation warranting forfeiture of the tenancy.
The landlord argues that eventually the premises are destined, once legalized, to become subject to the Rent Stabilization Law and Code. However it is not now subject to the Rent Stabilization Law and Code. The conduct complained of, which only took place for five months, was discontinued before this petition was even commenced. Respondent refunded the entire amount of the overcharge. Thus, when and if the subject unit becomes subject to the Rent Stabilization Law, the conduct will have long ceased to continue.
For all of the above reasons, petitioner has no cause of action and the petition is dismissed pursuant to CPLR 3211 (a) (7). The court thus need not and shall not reach the respondent’s motion for summary judgment pursuant to CPLR 3212.

For example, nonrelated, nontraditional cohabitation.