OPINION OF THE COURT
John S. Lansden, J.
D&R Realty Corp. seeks to recover possession of an interim multiple dwelling (IMD) loft unit at 42 Greene Street, third *204 floor front, New York, New York 10013 (premises), on the grounds that Robert J.E. Blakely, tenant of record, has illegally constructed a corridor in the premises. Respondent appears by counsel but has not interposed an answer. Pursuant to CPLR 3211, respondent moves to dismiss the proceeding due to improper service. Respondent alleges that service of the predicate notice was defective because petitioner failed to add five days for mailing of the notice of termination. Said three-day termination notice was mailed to respondent on November 17, 2004 and expired on November 23, 2004. Respondent argues that pursuant to the decision in Matter of ATM One v Landaverde (2 NY3d 472 [2004]), petitioner was required to add five days for mailing. Petitioner opposes the motion.
Analysis
The issue before this court is whether an additional five days for mailing a notice of termination is required in a proceeding seeking possession of an IMD unit governed by article 7-C of the Multiple Dwelling Law (also known as the Loft Law), in view of Matter of ATM One v Landaverde (2 NY3d 472 [2004]).
In Landaverde, a 10-day notice to cure was mailed on September 8, 2000. The tenant received the notice to cure on September 9, 2000 by both regular and certified mail. Said notice advised her that she had until September 18, 2000 to cure an alleged violation of the maximum occupancy provision of her lease. The trial court dismissed the proceeding, holding that CPLR 2103 (b) (2), which required the adding of five days to a mailing, should be applied in a summary proceeding to ensure that a tenant received the full cure period. Landlord appealed.
The Appellate Term, Second Department, determined that the trial court erred in applying CPLR 2103 (b) (2) as said provision only applies to papers served “in a pending action” (190 Misc 2d 76, 77 [2001]). Since a notice to cure is served prior to the commencement of a proceeding, CPLR 2103 (b) (2) would be inapplicable. However, the Appellate Term upheld the trial court’s decision and dismissed the proceeding as the tenant was not afforded the full 10 days to cure the alleged default. Landlord again appealed.
The Appellate Division, Second Department, agreed with the Appellate Term that the intent of 9 NYCRR 2504.1 (d) (1) (i) is to insure that, prior to commencement of a proceeding, the tenant receives at least 10 days within which to cure the alleged wrongful act (307 AD2d 922). The Appellate Division noted that *205 while service by mail was permissible under 9 NYCRR 2508.1, the regulations are silent as to when service is complete, whether it is on the mailing or on the receipt. In looking at the purpose of the governing regulations, the Appellate Division determined that service was completed upon receipt of the notice and subsequently dismissed the proceeding. The landlord obtained leave to be heard by the Court of Appeals on this issue.
Upon reviewing the issue, the Court of Appeals held that where a landlord serves a notice to cure, by mail only, the landlord was required to “compute the date certain by adding five days to the 10-day minimum cure period (see e.g. CPLR 2103 [b] [2]). In this manner, service will be deemed complete upon mailing, and a properly executed affidavit of service will raise a presumption that proper mailing occurred” (2 NY2d at 477-478).
In so holding, the Court also stated that “legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [enactors]” (id. at 477).
The Court of Appeals concluded that when reading the service provision, 9 NYCRR 2508.1, together with the notice to cure regulation, 9 NYCRR 2504.1 (d) (1) (i), adding five days as the trial court did, best effected the regulatory purpose of affording tenants the full cure period before they may be subject to lease termination. Adding five days, according to the Court, when serving notices to cure by mail, “balances the need for orderly and efficient resolution of lease violations with the stated purposes of the ETPA” (id. at 478). The primary concern for the Court of Appeals in Landaverde was clearly that tenants receive the benefit of the cure period and not be disadvantaged by the service method.
Respondent herein asserts that this court should reaffirm the position that tenants qualified for protection under the Loft Law have rights and obligations that are read in pari materia with those of rent-stabilized tenants (Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., 66 NY2d 298 [1985]). Respondent seeks to have this court determine that the holding in Landaverde applies to this proceeding and that petitioner was required to add five days to the mailing for service to be proper.
In Matter of Lower Manhattan Loft Tenants v New York City Loft Bd. (66 NY2d 298, 304 [1985]), the Court of Appeals held *206 that “statutes in pari materia are to be construed together and ‘as intended to fit into existing laws on the same subject unless a different purpose is clearly shown’ ” (citing Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach, 79 Misc 2d 438, 444 [1974], affd 48 AD2d 681 [1975], affd 39 NY2d 1029 [1976]). The Loft Law was created to protect covered tenants and to provide regulation of IMD units in much the same manner as the Rent Stabilization Law and Code. In Lower Manhattan Loft Tenants, the tenants challenged the propriety of a Loft Board regulation allowing landlords to commence eviction proceedings where protected tenants were not using an IMD as their primary residence. The Court of Appeals specifically rejected the tenants’ argument that as the term “primary residence” did not exist in the Loft Law, as it did in other rent regulatory statutes, article 7-C must be interpreted to cover any IMD, no matter how many other residences a tenant may have or the nature of the use of the IMD unit. To have held otherwise, according to the Court of Appeals, would have produced an “absurd result.” (Id.)
Petitioner asserts that the holding in Landaverde does not apply to the present proceeding for a number of reasons. First, the subject premises is an IMD loft unit where the lease commenced on June 1, 1979 and terminated on May 31, 1984. Thereafter, the terms of the lease agreement were projected into the statutory loft tenancy which is governed by the Loft Law. Therefore, according to petitioner, the method and time for service of notices are governed by the lease in this proceeding and not by a particular code or statute as in Landaverde.
Second, unlike the Emergency Tenant Protection Act of 1974 in Landaverde, the notice provision in the subject lease is not ambiguous as to when service is complete. Paragraph 27 of the lease states that if mail is the method of service, the service is complete when the notice is mailed. Petitioner served respondent with a notice of termination after expiration of the notice to cure pursuant to the lease. Paragraph 17 required petitioner to serve a three-day notice of termination. The termination notice was mailed on November 17, 2004 and expired on November 23, 2004. Based on the foregoing, petitioner asserts that service was complete upon mailing of the notice of termination and respondent received the full termination period.
Petitioner also argues that Landaverde involved a notice to cure which required a tenant to take affirmative actions. The present proceeding involves a notice of termination which *207 requires no affirmative actions on the part of respondent. Petitioner argues that respondent will not be prejudiced by not having the benefit of additional five days for mailing because petitioner must go through the legal process of a summary proceeding to evict the tenant.
This court is unpersuaded by petitioner’s arguments. The Court of Appeals in Landaverde held that five days must be added when a notice is served by mail only. (Landaverde, supra.) “In this manner, service will be deemed complete upon mailing, and a properly executed affidavit of service will raise a presumption that proper mailing occurred.” (Id. at 478, citing Kihl v Pfeffer, 94 NY2d 118, 122 [1999]; Engel v Lichterman, 62 NY2d 943, 944-945 [1984].)
Therefore, petitioner’s first and second arguments lack merit. While service is complete on the mailing (whether under the terms of the lease or as set forth in Landaverde), it is the method of service that determines if five days must be added. If a predicate notice is served by mail only, five days must be added even if the lease determines that service is complete on the mailing. Petitioner’s arguments ignore the Court of Appeals’ goal of ensuring respondents receive the full notice period.
Furthermore, other courts have extended the applicability of Landaverde to notices of termination with brief termination periods when the method of service is by mail only. (Kerrin Realty Corp. v Cruz, Civ Ct, NY County, Aug. 24, 2004, Lai, J., Index No. L&T 81894/03; KSLM Columbus Apts. Inc. v Bonnemere, NYLJ, Jan. 5, 2005, at 19, col 1 [Civ Ct, NY County, Mc-Clanahan, J.].) Landaverde was applied to these proceedings due to the brief termination period given to tenants during which time there could be an opportunity to resolve the situation, negotiate to have the notice rescinded, prepare for possible litigation, or vacate. (Id.)
The court agrees with the reasoning behind the decisions in Kerrin Realty Corp. v Cruz (supra) and KSLM Columbus Apts. v Bonnemere (supra). It is clear to this court that the concern in Landaverde was the short period during which action must be taken and that a tenant be given the full-time period under the notice to take said action. As such, it is appropriate to apply Landaverde to some notices of termination.
It is true that other courts have differed in whether or not to apply the Loft Law in pari materia with other provisions of the Rent Stabilization Law and Code. In Giachino Enters. L.P. v Inokuchi (7 Misc 3d 738 [2005]), petitioner commenced a *208 holdover summary proceeding for possession of an IMD unit on the grounds that the tenant charged his former roommate/co-occupant a rent in excess of the roommate’s proportional share. The tenant moved to dismiss for failure to state a cause of action because the rent overcharge statute, Rent Stabilization Code (RSC) (9 NYCRR) § 2525.7 (b), did not apply to loft units but only to rent-stabilized units. As such, according to respondent, overcharging a roommate was not a valid ground to evict a tenant qualified for protection under the Loft Law. The court rejected landlord’s argument that “the Loft Law [should be applied] in pari materia with the Rent Stabilization Law” and held that RSC § 2525.7 (b) was not applicable to the loft unit therein (at 739).
In Giachino Enters. v Inokuchi (supra), the court, following the holding in 270 Riverside Dr., Inc. v Braun (4 Misc 3d 77 [App Term, 1st Dept 2004]), held that neither the Loft Law nor rent control regulations have provisions prohibiting a tenant from overcharging a roommate. The court observed that historically there have been no regulations governing what a tenant can charge a roommate.
The court stated that although the Rent Stabilization Code, amended by the Division of Housing and Community Renewal in December 2000, added RSC § 2525.7 (b), this statute only applied to rent-stabilized units. The court further stated that neither the Loft Law nor the rent control regulations had been amended to add such a prohibition. The court reasoned that as no comparable statute had been enacted governing rent-controlled apartments or IMD units, rent gouging roommates only exists as a cause of action against rent-stabilized tenants.
However, in BLF Realty Holding Corp. v Kasher (299 AD2d 87 [2002]), the Appellate Division, First Department, held that the Loft Law was in pari materia with the rent control regulations and Rent Stabilization Law. As such, the remedy of eviction already available to landlords of rent-controlled and rent-stabilized apartments was further extended to include loft owners where a tenant overcharged subtenants more than triple the lawful rent over a four-year period. The Court in Kasher applied the reasoning of the Court of Appeals in Matter of Lower Manhattan Loft Tenants v New York City Loft Bd. (supra) in order to avoid an “absurd result.”
Based on the rulings in Matter of Lower Manhattan Loft Tenants (supra) and BLF Realty Holding Corp. v Kasher (supra), it is determined that Landaverde should apply to notices served *209 by mail only on a tenant qualified for protection under the Loft Law and an additional five days need to be added for the mailing. When a landlord seeks to serve a predicate notice containing a short cure or termination period, the conflicting interests for an orderly resolution of the landlord-tenant proceedings and sufficient notice to the tenant are the same, regardless of the type of rent regulation, and should be balanced accordingly.
Therefore, petitioner’s failure to add five days for mailing renders the service of notice of termination defective. Respondent’s motion to dismiss is granted without prejudice.