McCooe, J.
(dissenting). I respectfully dissent. The landlord *42 seeks to evict this rent-stabilized, tenant upon the ground that he overcharged various roommates with whom he shared the apartment. The tenant claims he moved into the apartment located at 208 West 30th Street in 1976 when it was commercial space and invested thousands of dollars in improvements, including plumbing and electrical work, in order to gain rent-stabilized status. His rent for the space is approximately $973 per month. There was no Rent Stabilization Code provision limiting the amount of rent a stabilized tenant could charge a roommate until December 20, 2000. The Code amendment provided that a tenant can only charge a roommate a proportional amount of the rent (i.e., 50% of the rent for one roommate).
This landlord took over the building in June 2004. In July 2004, a brother of the managing agent surreptitiously rented a room in the tenant’s apartment for four months at $900 per month. He never disclosed that he was the brother of the managing agent and never moved into the apartment. The tenant had previously rented a room to other roommates at $600 or $900 per month. This proceeding was commenced in December 2004.
The tenant attempted to cure his violation by refunding the excess rent to his former roommates. He had no contact information for two of the four prior roommates. He tendered refunds to two roommates. The check to the managing agent’s brother was never cashed. The check to the other roommate was cashed and returned to the tenant at the tenant’s request. Tenant initially denied this arrangement at trial, but later admitted it and the trial court characterized him as a “liar.” The tenant ultimately made restitution to this roommate which the trial court rejected as being too late.
The trial court awarded possession to the landlord after trial. The parties returned to the Trial Judge in July 2005 for a hearing on tenant’s motion to vacate the warrant or grant a probationary stay, and landlord’s cross motion for fair market use and occupancy. The tenant represented that he had refunded one roommate the appropriate portion of the security deposit, had placed funds in escrow with his attorney to repay the agent’s brother and asked the court to direct the agent’s brother to accept the funds. The court found that the facts of the case did not lend themselves to a cure and set the matter down for a hearing to determine the fair market value for use and occupancy.
*43 Until enactment of Rent Stabilization Code (RSC) (9 NYCRR) § 2525.7 (eff Dec. 20, 2000), it was settled law in this department that there was no restriction on the amount a tenant could charge a roommate (see Handwerker v Ensley, 261 AD2d 190 [1st Dept 1999]; 520 E. 81st St. Assoc. v Roughton-Hester, 157 AD2d 199 [1st Dept 1990]).
RSC § 2525.7 (b) provides:
“The rental amount that a tenant may charge a person in occupancy pursuant to section 235-f of the Real Property Law shall not exceed such occupant’s proportionate share of the legal regulated rent charged to and paid by the tenant for the subject housing accommodation. , . . The charging of a rental amount to an occupant that exceeds that occupant’s proportionate share shall be deemed to constitute a violation of this Code.”
Although RSC § 2525.7 (b) states that it is a violation of the Rent Stabilization Code to charge a roommate more than a proportional share of the rent, it does not provide that the landlord may terminate the tenancy of a stabilized tenant who overcharges a roommate (SBR Assoc. LLC v Diederich, 2003 NY Slip Op 51057[U] [App Term, 9th & 10th Jud Dists 2003] [“We note, however, that DHCR has taken the position that § 2505.8(b) and its counterpart in the Rent Stabilization Code (9 NYCRR 2525.7 [b]) were intended to vest a roommate with the right to file a complaint against the tenant and not to create a new cause of action for eviction”]; cf. RSC § 2525.6 [f] [allowing landlord to terminate for sublet violations]).
The failure of the promulgators to include the remedy of eviction in the regulation was “an indication that its exclusion was intended” (McKinney’s Cons Laws of NY, Book 1, Statutes § 74; see Sullivan v Brevard Assoc., 66 NY2d 489, 493-494 [1985]). Contrast this with the regulation specifically providing for eviction for sublet violations. Furthermore, I agree with the Division of Housing and Community Renewal that any recovery of an overcharge should be solely for the benefit of the roommate. Otherwise the tenant would be subject to double damages.
The First Department has indicated in dicta that “rent profiteering” in a roommate situation may entitle a landlord to maintain a holdover proceeding against the stabilized tenant (BLF Realty Holding Corp. v Kosher, 299 AD2d 87, 91 [1st Dept 2002], citing RAM 1 LLC v Mazzola, 2001 NY Slip Op 50073[U] [App Term, 1st Dept 2001] [landlord’s allegations of roommate *44 overcharge in violation of RSC § 2525.7 (b) sufficient to overcome dismissal motion]).
In more recent cases, where the circumstances were found not to rise to the level of “profiteering,” the courts have not required eviction of a long-term tenant and have provided an opportunity to cure. In 54 Greene St. Realty Corp. v Shook (8 AD3d 168 [1st Dept 2004]), although the tenant violated the Rent Stabilization Code by overcharging a roommate, the trial court refused to eject the tenant since the amount of overcharge was small and there was no evidence of bad faith or an intent to profiteer. In Shook, as in the case at bar, tenant had made substantial improvements to what had previously been loft space. The Appellate Division held that it was not unreasonable for the tenant to believe he was entitled to some compensation for the improvements he made. This court in Roxborough Apts. Corp. v Becker (11 Misc 3d 99 [App Term, 1st Dept 2006]) did not find commercial exploitation where the rent collected by the tenant from three roommates exceeded the regulated rent.
By contrast to Shook, Roxborough and this case, in West 148 LLC v Yonke (11 Misc 3d 40 [App Term, 1st Dept 2006]) the tenant turned her apartment into the “Chez Sylvie Bed and Breakfast” and advertised it in a directory of “Affordable Hotels.” Yonke charged each of numerous roommates nearly double the legal stabilized rent for the apartment. In those circumstances, this court concluded that the “commercial exploitation” of the apartment “required eviction” (Yonke, 11 Misc 3d at 41).
There are no factual issues present in this proceeding. The legal regulated rent and the rent collected from the roommates are not in dispute. The overcharge constitutes a violation of a recently enacted regulation. The two legal issues are whether a violation is a basis for eviction and, if so, does the overcharge constitute commercial exploitation warranting eviction of this long-term tenant whose improvements to the now very valuable premises achieved rent-stabilized status. My opinion is that they do not.
The judgment should be reversed and the petition dismissed.
McKeon, EJ., and Schoenfeld, J., concur; McCooe, J., dissents in a separate memorandum.