■ First Hudson Capital, LLC, Respondent, v Ron Seaborn, Appellant. [862 NYS2d 501]—

Order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered on or about March 30, 2007, which affirmed a judgment of the Civil Court, New York County (Gerald Lebovits, J.), entered June 20, 2005, after a nonjury trial, awarding possession to petitioner in a summary holdover proceeding, and modified an order, same court and Judge, entered on or about July 29, 2005, denying respondent's motion to vacate the warrant of eviction and granting petitioner's cross motion for a hearing to determine the fair market use and occupancy of the premises since the date of termination, to the extent of denying the cross motion and remanding the matter for further proceedings to determine the amount of use and occupancy due to petitioner, limited to the amount charged for the premises by petitioner plus additional amounts received by respondent as a result of the illegal roommate arrangements, reversed, on the law, without costs, the Civil Court orders vacated, the petition denied and respondent's motion to vacate the warrant of eviction granted.

Since it became effective December 20, 2000, Rent Stabilization Code (RSC) (9 NYCRR) § 2525.7 (b) makes it a violation to

charge a roommate more than a proportional share of the rent. However, unlike RSC § 2525.6 (f), which permits an owner to terminate the tenancy of a tenant who charges his subtenant more than the legal regulated rent plus no more than 10 percent if the apartment is sublet fully furnished (*see* RSC § 2525.6 [b]), RSC § 2525.7 (b) does not provide for termination of the lease. Prior to enactment of RSC § 2525.7, it was the firm rule in this Department that "[t]here is no cause of action for rent profiteering with respect to a roommate" (*Handwerker v Ensley*, 261 AD2d 190, 191 [1999]). Such position was in accord with our holding in *520 E. 81st St. Assoc. v Roughton-Hester* (157 AD2d 199, 202 [1990]) that a landlord may not evict a tenant for "profiteering" with respect to the rent charged a roommate. In so ruling, this Court stated: "Unlike the section pertaining to sublets, the paragraph in which the Legislature introduced the Roommate Law stresses the need to permit such living arrangements to continue and does not mention the elimination of speculation and profiteering as a purpose underlying the enactment of the statute (*Seaview-Atlas Mfg. Co. v Fonville*, [NYLJ, Apr. 19, 1989, at 23, col 4], *supra*). We conclude that this omission was deliberate and decline to impose the restrictions against profiteering in sublet situations to living arrangements involving roommates (*see, Sullivan v Brevard Assoc.*, 66 NY2d 489) . . . In sum, neither the lease nor any law governing rent-stabilized apartments permit a landlord to evict a tenant for earning a profit from the rent charged a roommate (*Schneller v Moed*, 128 Misc 2d 885)" (*id.* at 203-204). Our reading of the statute and the underlying legislative intent could not have been clearer, and that decision is still good law and binding upon us under principles of stare decisis.

Nevertheless the dissent attempts to discount this Court's holding in *Roughton-Hester* on the ground that it was issued a decade before the enactment of RSC § 2525.7 and "hardly provides a definitive answer as to whether the subsequently-enacted RSC § 2525.7 supports an eviction remedy." However, a fundamental principle of statutory construction is that "[i]n arriving at the legislative intent, the language of an amendment may be construed in the light of previous decisions construing the original act, it being presumed that the Legislature had such judicial construction in mind when adopting the amendment" (McKinney's Cons Laws of NY, Book 1, Statutes § 191, at 353-354). Nothing could make the legislative mandate clearer than when a court finds that a statute does not have an eviction provision and the Legislature later amends that statute but still omits such a provision. While the Rent Stabilization Code was amended since our decision in *Roughton-Hester* to prohibit

overcharging a roommate, our rationale in limiting evictions for overcharging a roommate to cases where there is specific regulatory authority for such a cause of action "is equally applicable here, if not more so" (see Giachino Enters. L.P. v Inokuchi, 7 Misc 3d 738, 742 [2005]). Moreover, the dissent's suggestion that we affirm the Appellate Term's application of "the rule it has developed through its own common-law jurisprudence since enactment of that provision," not only is legally unsupported, but defies logic in that neither the Appellate Term nor this Court may develop its own "common-law jurisprudence" in an area as thoroughly legislated and highly regulated as the rent stabilization laws in New York City by ignoring the plain language of a statute, its clear legislative intent, and binding case law precedent of this Court applying the statute.

Although this Court subsequently indicated that rent profiteering involving roommates might entitle a landlord to maintain a holdover proceeding against the stabilized tenant (BLF Realty Holding Corp. v Kasher, 299 AD2d 87, 91 [2002], lv dismissed 100 NY2d 535 [2003], citing RAM 1 LLC v Mazzola, 2001 NY Slip Op 50073[U] [App Term, 1st Dept 2001]), as noted by the Appellate Term in 270 Riverside Dr., Inc. v Braun (4 Misc 3d 77 [2004]), that case is both legally and factually distinguishable in that it addressed the interplay between the Loft Law and the Rent Stabilization Law as it concerned a tenant who subdivided and sublet his loft space.

Moreover, the Appellate Term for the Ninth and Tenth Judicial Districts has subsequently noted that "DHCR [the agency charged with enforcement of the Rent Stabilization Code] has taken the position that [section] 2505.8 (b) [of the Emergency Tenant Protection Regulations] and its counterpart in the Rent Stabilization Code (9 NYCRR 2525.7 [b]) were intended to vest a roommate with the right to file a complaint against the tenant and not to create a new cause of action for eviction (see Note, Regulating Roommate Relations: Protection or Attack Against New York City's Tenants, 10 Journal of Law and Policy, 539, 547, 585, n 36 [2002])" (SBR Assoc., LLC v Diederich, 2003 NY Slip Op 51057[U] [2003]).

While the 20-year tenant, who originally moved into commercial space and invested thousands of dollars in improvements in order to gain rent stabilized status, concededly advertised for roommates in the Village Voice and charged them more than their proportional share of the rent, this is not a case like West 148 LLC v Yonke (11 Misc 3d 40 [2006], lv denied 2006 NY Slip Op 73839[U] [1st Dept 2006]), where the tenant rented a portion of the stabilized apartment at double the regulated

rent to a series of guests or "roommates" and described the apartment, in both an Internet listing for "Affordable Hotels" and on her business card, as the "Chez Sylvie Bed and Breakfast" (*id.* at 41). It is closer to *54 Greene St. Realty Corp. v Shook* (8 AD3d 168 [2004], *lv denied* 4 NY3d 704 [2005]), where the tenant erroneously, but not unreasonably, believed that he was entitled to some compensation for the improvements he made to the former loft space. In any event, to the extent that those cases presuppose a cause of action for eviction by the landlord, they should not be followed. Concur—Mazzarelli, J.P., Andrias and Sweeny, JJ.

Saxe and Gonzalez, JJ., dissent in a memorandum by Saxe, J., as follows: The question presented on this appeal is whether Rent Stabilization Code (9 NYCRR) § 2525.7 (b), which prohibits a tenant in a rent-stabilized apartment from charging a roommate more than his or her proportionate share of the legal rent, permits a landlord to evict the tenant when a violation of this provision is established. I would affirm the holding of Appellate Term, First Department, which applied the rule it has developed through its own common-law jurisprudence since enactment of that provision—that the remedy of eviction is permitted where the evidence demonstrates intentional commercial profiteering from roommates by the tenant of record. That is precisely what happened here.

I further observe at the outset that the majority's discussion contains a fundamental inconsistency. On one hand, it supports its conclusion that eviction is improper here by equating respondent's conduct with the benign roommate overcharge in *54 Greene St. Realty Corp. v Shook* (8 AD3d 168 [2004], *lv denied* 4 NY3d 704 [2005]), and distinguishing it from the egregious commercial exploitation justifying the tenant's eviction for a violation of RSC § 2525.7 in *West 148 LLC v Yonke* (11 Misc 3d 40 [App Term, 1st Dept 2006], *lv denied* 2006 NY Slip Op 73839[U] [2006]). On the other hand, the majority follows that discussion with the offhand comment that "to the extent that those cases presuppose a cause of action for eviction by the landlord, they should not be followed." This Court cannot properly direct that *Yonke* not be followed while *at the same time* using *Yonke* to determine whether the facts here are similar enough to render its holding applicable to the present case.

The provision of the Rent Stabilization Code applicable to overcharging roommates, 9 NYCRR 2525.7 (b), was enacted in 2000. Unlike the section's counterpart regarding overcharging *subtenants*, 9 NYCRR 2525.6, which authorizes both an award of treble damages to the overcharged subtenant (RSC § 2525.6

[b]) and the termination of the lease of the prime tenant (RSC § 2525.6 [f]), the enactment regarding overcharging roommates contains no specific provision for how it may be enforced, or by whom.

Although RSC § 2525.7 contains no enforcement provision, it cannot seriously be suggested that it was intended to stand merely as an empty prohibition with no means of enforcement. Since enactment of the provision, Appellate Term, First Department has considered the issue in several cases and has concluded that RSC § 2525.7 supports a judgment of eviction in appropriate roommate-profiteering cases (*see e.g. Roxborough Apts. Corp. v Becker*, 11 Misc 3d 99 [App Term, 1st Dept 2006]; *West 148 LLC v Yonke*, 11 Misc 3d 40 [2006], *supra*; *RAM 1 LLC v Mazzola*, 2001 NY Slip Op 50073[U] [App Term, 1st Dept 2001], *lv denied* 2002 NY App Div LEXIS 6531 [2002]). Indeed, in two of those cases this Court has denied leave to appeal, which, although not a determination on the merits, indicates that we perceived no grave error in the rule enunciated in those cases (*see Matter of Marchant v Mead-Morrison Mfg. Co.*, 252 NY 284, 298 [1929]).

However, this Court has not directly ruled on the issue of whether RSC § 2525.7 supports a judgment of eviction for roommate-profiteering. Our decision in *520 E. 81st St. Assoc. v Roughton-Hester* (157 AD2d 199 [1990]), was issued a decade before the enactment of RSC § 2525.7, so our conclusion there, that a landlord may not evict a tenant for profiteering with respect to the rent charged to a roommate, while relevant to the interpretation of the statute, hardly provides a definitive answer as to whether the subsequently-enacted RSC § 2525.7 supports an eviction remedy. Yet, the majority treats that 1990 decision, issued 10 years *before* enactment of the provision, as controlling, trotting out a worn and tired proposition from McKinney's Statutes, a compendium of aphorisms where even a casual researcher can find some support for nearly any proposition, however dubious, sought to be advanced.

In order to arrive at our own conclusion as to whether Appellate Term has correctly held that an eviction remedy may be read into RSC § 2525.7, I therefore turn to consider rulings issued by this Court *since* enactment of the provision. Our ruling in *BLF Realty Holding Corp. v Kasher* (299 AD2d 87, 91 [2002], *lv dismissed* 100 NY2d 535 [2003]), is instructive, since we stated there that: "Rent Stabilization Code § 2525.7 (b) also prohibits a stabilized tenant from charging a roommate in excess of the roommate's proportional share of the stabilized rent. *Rent profiteering in the latter circumstance may also entitle a*

*landlord to maintain a holdover proceeding against the stabilized tenant"* (emphasis added). *Kasher* did not concern the interpretation of RSC § 2525.7 (b), and the above statement therefore constitutes dicta. However, in addition, this Court's decision in *54 Greene St. Realty Corp. v Shook* (8 AD3d 168 [2004], *supra*), provides further, albeit indirect, support for the proposition that RSC § 2525.7 authorizes eviction as an available remedy where roommates are overcharged and there is a finding of an intent to profiteer. While rejecting the remedy of eviction in that matter, we did so based on the nonegregious nature of the conduct; "the IAS court properly refused to eject the tenant and his roommate *since the amount of overcharge was small and there was no evidence of bad faith or an intent to profiteer"* (*54 Greene St. Realty Corp.*, 8 AD3d at 168 [emphasis added]). The holding implicitly acknowledges that eviction would be an available remedy in cases involving more egregious profiteering by the tenant. Notably, in *Kasher* we also cited with approval *RAM 1 LLC v Mazzola* (2001 NY Slip Op 50073[U] [2001], *supra*), in which Appellate Term, First Department held that RSC § 2525.7 supports a possessory cause of action for a roommate overcharge.

Finally, mention must be made of the majority's odd notion that a common-law court may not develop its own " 'common-law jurisprudence' in an area as thoroughly legislated and highly regulated as the rent stabilization laws of New York City." Without belaboring this point, it is incorrect. Statutes are interpreted by common law courts in their decisions, becoming part of the body of our common law. "[C]odes and statutes do not render the judge superfluous, nor his work perfunctory and mechanical. There are gaps to be filled" (Cardozo, The Nature of the Judicial Process, at 14 [1921]). The law of rent stabilization is no exception. Its provisions, its nuances, its silences and its legislative history, among other things, are and always will be subject to the scrutiny and interpretive powers of common law judges doing what they are empowered to do—decide cases.

I add that there is a significant policy rationale for permitting eviction of a rent-stabilized tenant who profiteered from roommates. When a tenant sublets, the landlord is entitled to demand an array of information, including a copy of the sublease, whereas the landlord has no right to any such information with respect to a roommate beyond the name of the new occupant (Real Property Law § 235-f [5]). With so little oversight over roommate arrangements, the possibility of profiteering from roommates will be better kept in check where tenants have reason to know that forming such an arrangement in violation of

the Rent Stabilization Code may result in the serious penalty of eviction rather than merely having to pay back rent overcharges.

I therefore reject the suggestion that eviction of tenants for overcharging roommates is never permitted because the regulation does not specifically authorize such a cause of action. Rather, I would adopt the rule stated by the Appellate Term, First Department, and implied in this Court's previously discussed cases: RSC § 2525.7 must be read to permit a cause of action to evict a rent-stabilized tenant who overcharges roommates, where the overcharges have been found to constitute the commercial exploitation of the tenant's rent-stabilized apartment through the use of intentional profiteering.

I would further adopt the finding of the Civil Court and Appellate Term that respondent's conduct amounted to intentional profiteering, rising to the level of commercial exploitation of his rent-stabilized apartment. The conduct of respondent here, as found by the trial court, was not of the benign nature demonstrated in *54 Greene St. Realty Corp. v Shook* (8 AD3d 168 [2004], *supra*). It was far closer to that in *West 148 LLC v Yonke* (11 Misc 3d 40 [2006], *supra*), which affirmed the eviction of the tenant of record where the tenant had rented a portion of her rent-stabilized apartment to a series of guests she termed "roommates," each of whom she charged nearly double the stabilized rent; the tenant had listed her apartment on the internet under "Affordable Hotels" and printed up business cards reading "Chez Sylvie Bed and Breakfast" (*id.* at 41), so the finding that she had commercially exploited her rent-stabilized apartment was well supported.

The present case parallels *Yonke* in many ways. Respondent sometimes collected rent virtually covering his entire stabilized rent, and sometimes, when he had two roommates simultaneously, he collected almost twice his stabilized rent. Moreover, respondent's credibility was seriously undermined by his testimony regarding the overcharge refund he purportedly paid to one roommate, Nigel Borel. Although respondent initially testified to having refunded Borel $1,350 by check on December 1, 2004, Borel then called that refund into question with his own testimony that respondent had instructed him that he would write Borel a check for $1,350, but that Borel would have to pay respondent cash in that amount, in order to make it appear that Borel had paid less rent than he actually did. Borel's bank statement showed a withdrawal of cash in the amount of $1,350 on December 9, 2004, which cash he testified he gave to respondent. Borel further testified that respondent set up this transaction after first indicating, in late November, that Borel

would have to vacate the premises because the landlord was in the process of making a case against respondent. When respondent was subsequently recalled to the stand, he admitted that when he gave Borel that check, he asked for the same amount back in cash, but he explained that he needed a loan, and that Borel had agreed to the loan. Moreover, he said he refunded Borel the $1,350 by mailing him a check to his place of business on June 2, 2005.

The Civil Court's rejection of respondent's credibility, and its resultant rejection of his defense that his violation of the roommate overcharge provision was minor and unwitting, was well supported by the testimony, and Appellate Term's characterization of respondent's actions as commercial exploitation of his stabilized apartment was an accurate assessment, warranting the resulting judgment.

There is no question that in appropriate circumstances a tenant who overcharged roommates should be given an opportunity to cure the violation (*see Roxborough Apts. Corp. v Becker*, 11 Misc 3d at 100); however, I agree with the trial court's determination that even if respondent's violation was considered curable, he did not succeed in establishing any true intent to undertake such a cure in good faith. Rather, respondent's conduct was on the order of that established in *Yonke*, such as would clearly justify the ordered eviction. Accordingly, I dissent. [*See* 15 Misc 3d 40.]